(29 Misc. Rep. 241.)

GOULD v. EDISON ELECTRIC ILLUMINATING CO. OF NEW YORK.

(Supreme Court, Special Term, New York County. October 24, 1899.)

1. ELECTRICITY—DUTY TO SUPPLY CUSTOMERS—RIGHT TO FIX MINIMUM CHARGE.
    Under Transportation Corporations Law, art. 6, § 65 (Laws 1890, c. 566), requiring an electric light company. on application, to make connections with any building, and furnish light thereto, but which does not limit the amount which may be charged therefor, the company may demand as a condition precedent that the applicant agree to pay a reasonable minimum monthly charge.

2. SAME.
    Where each additional lamp attached to the circuit of an electric light company necessitates an investment of $20 by the company, a demand that a prospective customer using 11 lamps shall agree to pay a minimum charge of $1.50 per month is reasonable.

3. EQUITY—PLEADING—ADEQUATE REMEDY AT LAW.
    Since the defense of adequacy of remedy at law, to be available, must be pleaded, an answer alleging that plaintiff has an adequate remedy at law is good although it states a conclusion.

Action by Benjamin A. Gould against the Edison Electric Illuminating Company of New York. Judgment for defendant. For former opinion, see 56 N. Y. Supp. 465.

F. W. Longfellow, for plaintiff.
Eugene H. Lewis, for defendant.

BEEKMAN, J.    This action is brought for a mandatory injunction requiring the defendant to reconnect the electric light appliances in plaintiff's apartments with the conductors of the defendant, and to resume supplying the plaintiff with electric light.    Damages to the extent of $500 are also demanded for the refusal of the defendant to comply with plaintiff's demand for such service.    An answer has been interposed, which, among others, contains what is described as a second and separate defense to the amended complaint.    To this the plaintiff has demurred for insufficiency.    Without undertaking to state in full the allegations it contains, which are somewhat voluminous, it is sufficient to say that the controversy arises upon the reasonableness of one provision which the defendant requires the plaintiff to assent to as a condition of supplying him with the light desired.    This provision was embodied in a paper tendered to the plaintiff for signature, described in the answer as "the usual and regular application for lighting service of the form and tenor theretofore adopted by the defendant, and required of all its customers." The stipulation in question, quoting from the answer, was that the plaintiff "would use electric current supplied by defendant for lighting his premises for the period of one year from the time at which connection between the defendant's mains and his premises should be made, and that he would pay for such electric current used by him during each month on presentation of bill at the rate of one cent per hour for each sixteen candlepower lamp, or the equivalent thereof, as measured by the meter upon the said premises for the purpose of measuring the current supplied under such application, subject to certain discounts therein set forth."    It was further provided that "a minimum monthly charge of one dollar and fifty cents ($1.50) should be made by the company for each separate month during which the agreement should be in effect."    It is this last provision which the plaintiff resists as unreasonable, and, if his contention in that regard is correct, the defendant had no right to require his assent thereto as a condition of performing the legal duty which rests upon it of supplying light when properly demanded.    What that duty is is expressed in article 6, § 65, of the transportation corporations law (chapter 566, Laws 1890), which, among other things, provides that, upon application in writing of the owner or occupant of any building or premises within 100 feet of the wires of any electric-light corporation, and the payment by him of all money due from him to such corporation, the latter shall supply electric light as may be required for lighting such building or premises; and that if for the space of 10 days after such application and the deposit, if any be required, of a reasonable sum, which the company is entitled to exact as security for the payment of its compensation, the corporation shall refuse or neglect to supply electric light as required, such corporation shall forfeit and pay to the applicant the sum of $10, and the further sum of $5 for every day thereafter during which such refusal or neglect shall continue.    It is provided, however, that no such corporation shall be required to lay wires necessary to comply with such an application where the ground in which the same is required to be laid shall be frozen, or shall otherwise present serious obstacles to laying

the same; nor unless the applicant, if required, shall deposit in advance with the corporation a sum of money sufficient to pay the cost of his portion of the wire required to be laid, and the expense of laying such portion.

It will be observed that the legislature has not undertaken to regulate the price at which such light shall be supplied, nor to limit or define what compensation the corporation may exact for the service rendered by it. In that regard it is under no legal restraint, except that its charges must be reasonable and uniform. Whether, in a given case, they are so or not, is a proper subject for inquiry and determination by the court, in view of the quasi public nature of the business, and the duty towards the public imposed by law upon the corporation. Lough v. Outerbridge, 143 N. Y. 271, 277, 38 N. E. 292. The statute recognizes the right to charge for light consumed, the cost and expense of laying wires, and a rental for wire and apparatus (Transportation Corporations Law, art. 6, §§ 66, 68); but it does not assume to say what may or may not be reserved for either, nor does it require the amount charged to be separated into items with respect to its constituent elements. The law does not contemplate that the defendant shall do business at a loss. It is expected that it will, and it is entitled to, make a reasonable profit upon its venture, and the sole question in such a case as this is whether the charge made is unreasonable, considering all that the defendant is required to do to meet each customer's demand. It is stated in the fourth paragraph of the defense demurred to that the current is generated by dynamos driven by steam engines supplied with steam from boilers, all located in a station building, and, when generated, is transmitted directly to the defendant's underground conductors leading to the premises of the consumer; that each additional lamp connected with defendant's system necessitates an additional investment by it in distributing conductors and local appliances of about $20 in addition to the cost of generating and delivering the electric current; that the number of lamps which the plaintiff desired was 11, and that the total additional investment thus made necessary in order to comply with his demand for service was at least the sum of $220. How, then, can it be said that a fixed charge, not based upon actual consumption, is of itself improper or unreasonable? The customer does not bind himself to use any particular amount of light, so that the return to the company, based on actual consumption, would rest entirely upon his volition, and it would, therefore, depend upon him whether the service he has required the corporation to be in constant and immediate readiness to render is profitable or unprofitable to the latter. But this constant condition of readiness is a necessary and unavoidable obligation, which must be sustained, in order to meet instantaneously the demand for light, which the consumer is entitled to have at any moment that he wishes it. It thus forms a part of the service to be rendered, and is an item properly to be considered when the reasonableness of the charges exacted by the company is called in question. As we have seen, the latter is not confined by statute to any specific rate, nor has any attempt been made to measure or limit

the compensation which such corporations may lawfully charge, as has been done in the case of gas companies, so that they are free to exact a reasonable return for the service required, which includes, as I have said, not only the actual supply of electric light, but the readiness to supply it, coincidently with the customer's desire to have it. The only condition affecting the right is that the compensation must be reasonable, and, what is also incidental to this requirement, that it should be uniform, namely, the same for all customers similarly situated. Undoubtedly, the demand which those desiring to use it are entitled to make for electric light imports an intention on their part to consume it to some extent, and that each lamp ordered is requisite for that purpose. The charge which the defendant makes is based primarily upon actual consumption over which it has no control. One consumer with the same number of lamps will use more than another. In both cases the return to the company may be remunerative, or the use of one may be so inconsiderable as to involve a loss. To meet this contingency the monthly minimum charge of $1.50 is made. But it must be borne in mind that this payment is not in addition to the charge for actual consumption. Where light is consumed which entitles the company to payment, on meter measurement, of a sum per month equal to or in excess of the so-called minimum charge, the customer pays only for the light he has actually had; so that this fixed charge becomes practically operative only where his consumption falls below the extent of use which it measures. I can see nothing unreasonable in this when the service, as I have defined it, which the company is obliged to render, is considered. It is not a penalty for a failure to use defendant's product, but is properly to be regarded as compensatory for that part of the service which is at all times being rendered in the maintenance of the apparatus and connections through which the electric current is made available to the customer for the production of light at his pleasure. The plaintiff distinctly refused to pay any such charge, and the defendant was, therefore, justified in refusing to supply him with light. The duty resting upon the company under the statute imports a reciprocal one on the part of the customer to pay for the service which he requires, and, where the latter refuses in advance to pay charges which appear to be reasonable, the company is under no obligation to render the service demanded. As the defense in question is sufficient upon its face, it follows that the demurrer thereto must be overruled.

The defendant has also set up certain additional defenses, asserting that the plaintiff has adequate remedies at law, which have also been demurred to. While it would seem that such a defense, so called, is a mere conclusion of law, it appears to be necessary to plead it where the defendant intends to raise the question upon the trial; otherwise, he will be deemed to have assented to the disposition of the controversy on the equity side of the court. Ludlow v. Simond, 2 Caines, Cas. 1, 40, 56; Hawley v. Cramer, 4 Cow. 717, 726; Grandin v. Leroy, 2 Paige, 508; Truscott v. King, 6 N. Y. 557; Town of Mentz v. Cook, 108 N. Y. 504, 508, 15 N. E. 541; Hawes v. Dobbs, 137 N. Y. 465, 470, 33 N. E. 560. In the case of Ludlow v. Simond, decided in 1805, Judge Thompson says (page 40):

"I am inclined to think the respondent comes too late with an objection to the jurisdiction of the court, he having answered and contested the merits, the subject-matter of the bill being within the jurisdiction of the court. This appears to me to be a reasonable rule, and calculated to save expenses. It is a good general principle that, where a party objects to the jurisdiction of a court, he ought to do it at the earliest opportunity. I would not, however, be understood to extend this rule to cases where the subject-matter is not within the jurisdiction of the court."

In the case of Town of Mentz v. Cook, Judge Finch says (page 508, 108 N. Y., and page 542, 15 N. E.):

"It appears to be settled by a very general concurrence of authority that a defendant cannot, when sued in equity, avail himself of the defense that an adequate remedy at law exists, unless he pleads that defense in his answer. * * * The rule proceeds upon the basis that parties may, by their mutual assent, litigate their differences in a court of equity where the assent of the defendant, if withheld, might induce the court to refrain from the exercise of its jurisdiction. That jurisdiction existing over the general subject, the question of its exercise in the given case cannot be raised unless the answer raises it."

Certainly, as a statement of a defense to the action, it does not seem to be congruous with the rules of pleading established by the Code, and ought rather to be considered as in the nature of a formal notice to the plaintiff that the defendant does not intend to submit to a decision of the controversy on the equity side of the court, and will, upon the trial of the action, ask for a dismissal on the ground that the plaintiff has an adequate remedy at law, which he should pursue. Whether there is such a remedy forms a proper subject for consideration upon the trial.

The demurrer is therefore overruled, with costs, and judgment ordered in favor of the defendant accordingly.