(88 App. Div. 289.)

### MOORE v. CHAMPLAIN ELECTRIC CO.

(Supreme Court, Appellate Division, Third Department.   November 11, 1903.)

1. ELECTRIC LIGHT—FAILURE TO FURNISH TO DWELLING—PENALTY.

Under Transportation Corporations Law (Laws 1890, c. 566, p. 1148) § 65, providing that the occupant of any premises within 100 feet of the wires of any electric light corporation may require it to supply him with electric light, and, on failure to do so within 10 days, it shall forfeit certain sums to the applicant, an occupant is not entitled to make such requirement, and collect the penalty for failure to comply therewith, because within 100 feet of the company's wire to light the street, which could not be used for lighting dwellings.

Chester, J., dissenting.

Appeal from Trial Term.

Action by John N. Moore against the Champlain Electric Company for penalties.   From a judgment in favor of plaintiff, defendant appeals.   Reversed.

The defendant is a domestic corporation engaged in the business of furnishing light by electricity for streets and buildings in the village of Champlain, in this state.   It had extended upon its poles through Locust street (a public highway in such village) a wire connected with its power house, and used for the purpose of lighting such street by electricity, but such wire cannot be used for the purpose of furnishing electricity for the lighting of houses or other domestic purposes.   The current of electricity that is manufactured for and distributed over this wire is intended for street lighting only. It is much too strong to be utilized for domestic purposes, and no part of it can be diverted from this wire to household uses by the use of a transformer, or any other method applicable to the defendant's system.   The plaintiff owns and occupies a dwelling house on Locust street that is within 100 feet of the wire aforesaid, but there is no other wire belonging to the defendant upon such street, and no wire that could be used for lighting his house within 1,700 feet thereof.   The plaintiff applied, in writing, to the defendant to light his house by electricity, and otherwise complied with the requirements of sections 65 and 66 of the transportation corporations law (chapter 566, p. 1148, of the Laws of 1890).   The defendant refused to furnish the light asked for, and this action is brought to recover the penalties given by such section 65.   The trial court ordered judgment for such penalties to the amount of $80, and for costs, and from such judgment this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, and CHESTER, JJ.

L. L. Shedden, for appellant.
John H. Booth, for respondent.

PARKER, P. J.   It is evident that the defendant, in order to comply with the plaintiff's request, must have erected a new wire from its power house to the plaintiff's premises.   It must have constructed a new "main," so to speak, a distance of not less than 1,700 feet, because the wire that passed through Locust street within 100 feet of the plaintiff's premises could not be at all utilized for furnishing the light that the plaintiff desired.   These penalties, therefore, have been imposed upon the defendant for not properly extending its mains through the village of Champlain; and the judgment is rendered upon the theory that it has violated the obligations of its charter, under which it was liable to furnish electric lighting to all residents

of the village who demanded the same under circumstances that were just and reasonable. After a careful examination of the statute, I have come to the conclusion that the section in question has no application to such a situation. Section 65 is lengthy, and it is not necessary to quote it in full. In substance, it provides as follows: "Any owner or occupant of any premises within 100 feet of any main laid down by any gas-light corporation, or the wires of any electric-light corporation," and who has fully paid all money due from him to the corporation, may require such corporation to supply him gas or electric light, notwithstanding the fact that a prior occupant is still indebted to the corporation for gas or electric light supplied, or meter, wire, pipe, or other fittings furnished, to such occupant, unless the owner or occupant so applying has undertaken with the prior occupant, so indebted, to himself pay such indebtedness, and still refuses to do so. If, after having so requested in writing, the corporation shall refuse or neglect to supply gas or electric light for the space of 10 days, the corporation shall forfeit and pay to the applicant the sum of $10, and the further sum of $5 for every day thereafter during which such refusal or neglect shall continue. It is provided, however, that no corporation shall be compelled to lay "service pipes or wires" through frozen ground, or such as shall otherwise present serious obstacles to laying the same, nor unless the applicant, if required, shall deposit in advance with the company a sufficient sum to pay the cost of "his portion of the pipe or wire required to be laid, and the expenses of laying such portion." It is also provided that the applicant, if required, shall deposit a reasonable sum, as provided in section 66. Evidently the purpose of this section was not to compel a gas or electric light company to properly extend its mains and wires for furnishing light throughout the village, and to perform its full duty under its charter. The right of the applicant to demand a supply of gas or light is based upon the fact that the mains or wires are already located within 100 feet of his premises. Such a statute is utterly futile to compel a gas company to properly lay its mains throughout the village. The party to whom the penalty is given can make no such complaint as that, for the statute assumes that, as to him, the main is already laid. And it is equally clear that, in the case of an electric light company, it cannot be made applicable to a mere omission to properly extend its wires into such places as under its charter they ought reasonably to be extended. It is only against such gas company as has already extended its means of furnishing gas, to wit, "its mains," to within 100 feet of the applicant, and against such electric light company as has already extended its means of furnishing electric light, to wit, its wires, to within a like distance, that the penalty is given for a failure to furnish it. Hence the section should not be interpreted as if its purpose was to compel the companies to properly extend their means of furnishing light to the inhabitants of the village, nor so that it should have one meaning as applied to gas companies, and another meaning as applied to electric light companies.

Chapter 311, p. 698, of the Laws of 1859, was originally enacted as applicable to gas companies alone. Electric light companies were

not then in operation. Subsequently the same provisions were re-enacted in section 65, above referred to, save that electric light companies were included in it; and as to such companies the word "wires" was used in the same connection and with the same meaning as was the word "mains" with reference to gas companies. As to both such companies the meaning and purpose of the act is apparent. It had been the custom of such companies to cut off their supply of light from any premises if the occupant was in arrears in the payment of back charges for the light supplied or fittings furnished, and to refuse to furnish any more light to such premises until such back charges were paid, even though their occupancy had passed into the control of other parties who were in no way liable for such charges. It was a method by which the companies forced the owner of premises to pay all back charges against prior occupants, although no claim against him existed therefor. This statute was passed to meet that situation, and most of its provisions are directed towards securing and adjusting the rights of both the company and the owner under such circumstances. But the act is broad enough to apply to all companies whose mains are within 100 feet of the applicant's premises, although not connected with them, and therefore provisions are made in the act concerning their liability to make such connections. The term "service" pipe or wire, as used in that connection, means the connection from the street main or wire to the house, and usually the expense of laying that is borne by both the company and the owner in proportions agreed upon between them; and it is as to that expense that the applicant is required to advance his proportion, if the company demand it, before he can insist on gas or light being furnished to him. Evidently this provision does not indicate that any expense in laying additional mains is expected to be borne by the company and the applicant. So the provisions of section 66 require the applicant to deposit for two months in advance, if demanded, a reasonable sum for the light furnished, and require the company to pay interest on such deposit. Such provisions do not throw any light upon the interpretation of the prior section. The money is advanced solely to secure the payment for light to be thereafter used, and has no application to the question whether the mains are already laid, or to be thereafter laid. The question, then, how the phrase "or wires of any electric light corporation," used in this section, is to be construed, should be considered with reference to the object and purpose of the act. It should be given such a meaning as will impose upon an electric light company the same responsibility as is imposed by the word "main" upon a gas company; no more. None of us have any doubt but that by the word "mains" those pipes were intended through which the company distributed the gas that was designed to be taken therefrom into the buildings to be lighted. So the word "wire," as applied to electric light companies, was intended to designate the wire through which was distributed the electricity with which the houses were to be lighted. The fact that the company used another and different wire to light the streets does not change the situation. That wire does not take the place which the "main" takes in a gas company, nor place the electric light com-

pany in the same situation. That wire has no application to the duties which this statute seeks to secure the performance of, and hence the fact that it is within 100 feet of the applicant does not bring the company within the provisions of such section.

It is a familiar rule that statutes imposing penalties should be construed strictly in favor of the party against whom they are given (Manhattan Co. v. Kaldenberg, 165 N. Y. 7, 58 N. E. 790), and it seems obvious that no penalty is imposed upon either of such companies except where the premises to be supplied with the light are within 100 feet of the "main" or "wire" that is the source of such supply.

Whether or not it was the duty of this defendant, under its corporate obligations, to extend its wires for supplying lights for household purposes through 'Locust street, and into this plaintiff's premises, is not a question presented by this action. That question can be determined in other proceedings, and adequate relief for any breach of that obligation can be so obtained. People ex rel. Kennedy v. Manhattan Gaslight Co., 45 Barb. 136; Gould v. Edison Electric Illuminating Co., 29 Misc. Rep. 241, 60 N. Y. Supp. 559; McEntee v. Kingston Water Co., 165 N. Y. 27, 58 N. E. 785. The single question here is, has it forfeited to this plaintiff, under this statute, the penalties claimed? Upon the conceded facts, I am of the opinion that it has not, and that hence the judgment appealed from must be reversed.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event. All concur, except CHESTER, J., dissenting.