THE CITY OF ROCHESTER, Respondent, *v.* ROCHESTER GAS AND ELECTRIC CORPORATION, Appellant, Impleaded with Another.

**Public service commission — gas companies — authority of commission to order or permit a service charge for gas meters by a gas company.**

The public service commission has authority and jurisdiction to order or permit a service charge by a gas company. Such a charge, reasonably computed, and moderate in amount, does not involve *per se* an illegitimate discrimination between classes of consumers (Public Service Comm. Law, § 65, subds. 1, 5 [Cons. Laws, ch. 48], as amd. by L. 1921, ch. 130; § 66, subd. 14, as amd. by L. 1921, ch. 134), nor does it constitute " rent on a gas meter " within the meaning of section 66 of the Transportation Corporations Law, and the charging and collection thereof consequently is not barred by such section.

*City of Rochester* v. *Rochester Gas & Elec. Corp.*, 199 App. Div. 944, reversed.

(Argued February 1, 1922; decided February 28, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 3, 1921, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

*Daniel M. Beach* for appellant. The service charge is not rent of a gas meter within the meaning of section 66 of the Transportation Corporations Law. (*People* v. *Briggs*, 193 N. Y. 457; *Jones* v. *Richmond Gas Co.*, 7 App. Div. 465; *Matter of De Camp*, 19 App. Div. 564.) The public service commission had authority and jurisdiction to order the service charge. (*Texas P. R. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 553; *Pennsylvania R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121, 131; *Murray* v. *New York Tel. Co.*, 170 App. Div. 17; 266 N. Y. 590; *Metzger* v. *New York State Railways*, 168 App. Div. 178; *City of New York* v. *N. Y. Edison Co.*, 196 App. Div. 44.)

*William L. Ransom* and *Colley E. Williams* for Empire State Gas and Electric Association, *amicus curiæ.* There is no foundation for suggestion that the public service commission had not power to authorize anything except a " flat " rate which would show a uniform price to all consumers, if figured in terms of cents per thousand cubic feet of gas actually consumed. (*City of New York* v. *N. Y. Edison Co.*, 196 App. Div. 644; *City of New York* v. *Brooklyn Edison Co.*, N. Y. L. J., May 10, 1921; *Silkman* v. *Water Comrs.*, 152 N. Y. 327; *N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502; *Snell* v. *Clinton El. Lt. Co.*, 196 Ill. 626; *Matter of Quaquina Bay Ry. Co.*, P. U. R. 1919 E, 875; *Interstate Com. Comm.* v. *Ch. & G. W. R. Co.*, 141 Fed. Rep. 1003; *Western Union Teleg. Co.* v. *Call Co.*, 181 U. S. 92; *Matter of Kansas City El. Lt. & P. Co.*, P. U. R. 1917 C, 728; *Interstate Com. Comm.* v. *Ala. Midland Ry. Co.*, 168 U. S. 144; *Civic League* v. *St. Louis Water Co.*, P. U. R. 1917 B, 576; *Interstate Com. Comm.* v. *Nashville Ry. Co.*, 120 Fed. Rep. 934; *Interstate Com. Comm.* v. *Texas Ry. Co.*, 52 Fed. Rep. 187.) The " service charge " as a part of the rate for gas does not constitute " rent on a gas meter " within the meaning of section 66 of the Transportation Corporations Law. (*I. C. Comm.* v. *U. P. Ry. Co.*, 222

U. S. 541; *C. M. B. Co.* v. *Chicago Stage Co.*, 287 Ill. 320; *Wisconsin Tel. Co.* v. *Ry. Comm.*, 156 N. W. Rep. 614; *Baltimore* v. *Carnegie Steel Co.*, 251 Fed. Rep. 682; *Garwood* v. *Colorado & S. R. Co.*, P. U. R. 1916 A, 911; *Garricott* v. *N. Y. State Ry. Co.*, 223 N. Y. 9; *Platt* v. *Le Cocq*, 158 Fed. Rep. 723; *Matter of Madison*, P. U. R. 1919 E, 543; *Guggeline R. Co.* v. *Ry. Comm.*, [Texas] 212 S. W. Rep. 703; *Texas & Pac. Ry.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *Loomis* v. *Lehigh Valley Co.*, 240 U. S. 43.) The service charge fixed by the commission is in no sense unjust, unreasonable or discriminatory. (*Kennedy* v. *De Kalb-Sycamore Co.*, P. U. R. 1917 E, 314; *Matter of Lima Natural Gas Co.*, P. U. R. 1919 E, 169; *Sellersville* v. *Highland Gas Co.*, P. U. R. 1920 A, 323; *Trustees of Sag Harbor* v. *Long Island Gas Corporation*, P. U. R. 1919 E, 166; *Ben Avon Borough* v. *Ohio Valley Water Co.*, P. U. R. 1917 C, 421; *Matter of City Light & Traction Co.*, P. U. R. 1918 F, 949; *Matter of Utah Gas & Coke Co.*, P. U. R. 1919 D, 664; *City & County of San Francisco* v. *Spring Valley Water Co.*, P. U. R. 1919 A, 430; *Town Board of Canton* v. *St. Lawrence Transmission Co.*, P. U. R. 1912 F, 218; *Heckert* v. *Hegins Co.*, P. U. R. 1920 B, 395.)

*Charles L. Pierce, Corporation Counsel,* for respondent. The commission did not have jurisdiction to permit or order the service charge. (*People ex rel. M. G. Co.* v. *P. S. Comm.*, 224 N. Y. 156; *People ex rel. N. Y. Tel. Co.* v. *Pub. Serv. Comm.*, 157 App. Div. 156; *People ex rel. Binghamton L., H. & P. Co.* v. *Stevens*, 203 N. Y. 7; *Matter of Quinby* v. *Pub. Serv. Comm.*, 223 N. Y. 244; *People ex rel. N. Y., etc., R. R. Co.* v. *Willcox*, 200 N. Y. 423; *Matter of Public Service Commission*, 162 App. Div. 371; 214 N. Y. 46; *People ex rel. Pavilion N. G. Co.* v. *P. S. Comm.*, 188 App. Div. 36; *People ex rel. Kings Co. Lighting Co.* v. *Straus*, 178 App. Div. 84.) The service charge is unjust, unreasonable and discriminatory. (Cons.

Laws, ch. 48, § 65.) The service charge constitutes "rent on a gas meter" within the meaning of section 66 of the Transportation Corporations Law. (*City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505.)

*John P. O'Brien,* Corporation Counsel (*James A. Donnelly, Judson Hyatt* and *Harry Hertzoff* of counsel), for City of New York, *amicus curiæ.* The public service commission of the state of New York, under chapter 48, Consolidated Laws, as amended, had no power to impose a "service charge" as such on a consumer of gas. (*Village of Ft. Edward* v. *H. V. R. R. Co.*, 192 N. Y. 139; *People ex rel. South Shore Traction Co.* v. *Willcox*, 196 N. Y. 212; *People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1; *People ex rel. N. Y., N. H. & H. Ry.* v. *Willcox*, 200 N. Y. 423; *Matter of Quinby* v. *Pub. Serv. Comm.*, 223 N. Y. 244; *People ex rel. Municipal Gas Co.* v. *Pub. Serv. Comm.*, 224 N. Y. 156; *Fire Dept.* v. *Gilman*, 149 N. Y. 453; *People* v. *Kaye*, 212 N. Y. 415; *Park Abbott Realty Co.* v. *Iroquois Nat. Gas Co.*, 102 Misc. Rep. 266.) The "service charge" as imposed is unjust, unreasonable and discriminatory. (Cons. Laws, ch. 48, § 65, subd. 2.) The "service charge" imposed by the plaintiff in this case is substantially "rent on a gas meter" which is inhibited by section 66 of the Transportation Corporations Law. (*Municipal Gas Co.* v. *P. S. Comm.*, 225 N. Y. 89.)

*John Holley Clark, Jr.,* for the Flushing United Association, *amicus curiæ.* The so-called service charge violates both the letter and the spirit of section 66 of the Transportation Corporations Law. (*City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505.) The charging of any sum beyond and above the commodity charge for gas is contrary to expressed public policy and to the fundamentals of the law relating to public service corporations. (*Sellersville* v. *Highland Gas Co.*, P. U. R. 1920 A, 321; *Stadlander*

·v. *N. Y. Edison Co.*, P. U. R. 1915 B, 685; *Hartford v. H. C. Gas L. Co.*, P. U. R. 1920 F, 840.)

*James Taylor Lewis* for City of Yonkers, *amicus curiæ.*

*Charles A. Van Auken, Corporation Counsel,* for City of New Rochelle, *amicus curiæ.* A service charge is in effect rent for a gas meter and is in violation of section 66 of the Transportation Corporations Law. (*City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505.) The service charge is unjust, unreasonable and unjustly discriminatory. It makes a discrimination against the small consumer. It disguises the rate the consumer is actually paying. (Cons. Laws, ch. 48, § 65, subd. 2.)

*Clinton T. Taylor, Corporation Counsel,* for City of Mount Vernon, *amicus curiæ.* The public service commission has no authority or jurisdiction to fix any rate for the supply of gas other than the maximum rate. (*City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505.)

*William S. Rann, Corporation Counsel (Ralph K. Robertson* of counsel), for City of Buffalo, *amicus curiæ.* No authority exists in the public service commission to fix a service charge. (Cons. Laws, ch. 48, § 72.) The public should be protected against indirect charges such as this service charge. (*City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505.)

CARDOZO, J. The Rochester Gas and Electric Corporation petitioned the public service commission for permission to increase the price of manufactured gas. The commission made an order fixing the rate at $1.30 per thousand cubic feet of gas in addition to a " service charge " against each consumer of forty cents per month. The service charge alone is the subject of this controversy. The city of Rochester, one of the consumers affected by the

order, prays an injunction directed to the commission and the company. The submission restricts the controversy to three questions:

*First.* Did the Public Service Commission of the state of New York, second district, have authority and jurisdiction to order or permit the service charge of forty cents per consumer per month as provided in its orders of July 1, 1920, and October 14, 1920?

*Second.* Is such service charge unjust and unreasonable or unjustly discriminatory, regardless of the amount thereof?

*Third.* Does such service charge constitute " rent on a gas meter " within the meaning of section 66 of the Transportation Corporations Law, and is the charging and collection thereof consequently barred by such section?

If these questions are answered in favor of the plaintiff, the stipulation is that an injunction is to issue. In view of this stipulation, we do not attempt to consider whether the remedy would be held appropriate if objection had been made to it. We pass directly to the merits.

The expenses of a gas company are incurred partly in manufacture and partly in distribution. Its income must be adequate to reimburse it for the one outlay as for the other. Expenses of manufacture may be apportioned among consumers in proportion to the quantity of gas consumed. Expenses of distribution in their division may follow other lines. Some remain constant whether consumers are few or many. Others increase or diminish at a uniform rate with the number of the patrons. A service charge is an attempt to make the incidence of the burden as wide as the incidence of the benefit. From all the items included in the cost of distribution it segregates, and divides *per capita*, those dependent upon numbers. Such items there always are. Whenever a building is connected with a main, there is expense which continues while the connection is maintained. This expense will be the same though only a trifling quantity

of gas, or even none at all, is used by the householder requiring the connection.  In the absence of a service charge or some similar device, there is the benefit of facilities, which would otherwise be needless, without the burden of contributing to the cost of supplying or main-taining them.  The householder who closes his dwelling for the summer, and pays nothing in the interval, shifts the cost of maintenance incurred in his behalf to the householder whose dwelling is open throughout the year. The occupant who consumes something, but not enough to pay his share of the expense, is carried by his neighbors when rates are increased to compensate for profitless accounts.  Sometimes this result is avoided through the device of a minimum bill, which differs from a service charge in this only, that the charge is absorbed and disappears when the minimum is reached.  For the man who does not take anything, or less than the amount prescribed, the two devices are the same.  Each is an expedient for maintaining the equilibrium between service and requital.

With this statement of the problem, the first subject of inquiry will be the jurisdiction of the commission. The argument is made that jurisdiction is limited to prescribing the charge for gas as distinguished from the charge for service.  We find no such limitation in the statute.  " Every gas corporation " is required to " fur-nish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable " (Public Service Commissions Law, sec. 65, subd. 1; Consol. Laws, ch. 48).  " All charges made or demanded by any such gas corporation,   *   *   * for gas,   *   *   * or any service rendered or to be rendered, shall be just and reasonable and not more than allowed by law or by order of the commission" (sec. 65, subd. 1).  " Every unjust or unreasonable charge made or demanded for gas,   *   *   * or any such service, or in connection therewith, or in excess of that allowed by

law or by the order of the commission is prohibited" (sec. 65, subd. 1). We are told that the plaintiff, being a public service corporation, is bound to serve, and that since it is bound to serve, it may not charge inactive accounts for maintaining facilities for service. The conclusion does not follow from the premise. The law imposes the duty to establish connections for the householder who demands them, but it does not impose the duty either to install or to maintain gratuitously. No one is under an obligation to permit connections to be made between his building and the mains. If he demands the facilities with the added expense that follows, he thereby invites a service, and must be numbered among those for whom service is maintained. The legislature has nowhere said that benefit shall be divorced from burden. On the contrary, permission is expressly given to assess upon the householder the entire cost of installing service pipes beyond the street line (Transp. Corp. Law, sec. 62; Consol. Laws, ch. 63; *Moore* v. *Champlain Electric Co.*, 88 App. Div. 289), and to demand a deposit in advance sufficient to pay therefor. If there is a right to require payment for installation, there must be a right to require payment for repairs. If there is a right to insist upon payment in a lump sum, there must be a right to distribute the payment in accordance with the monthly average of cost. Even if installation were at the cost of the company alone, this would not mean that a return upon the cost would cease to be a factor in the computation of the charge for service. The burden of maintaining the agencies of distribution is to be apportioned among the total body of patrons for whose benefit the agencies exist. No doubt it is to be apportioned fairly and reasonably. But if that requirement is satisfied, it is not a ground for complaint that each has been required to contribute his share of the expense. A service charge is not something in addition to the price that would otherwise be fair and reasonable. It enters into the price

of the commodity, not as an element of addition, but as an item of deduction. In the case at hand, the finding is that if the service charge were dropped, the price of gas, now $1.30 per thousand cubic feet, would become $1.45. The revenues of the company are the same whether rates are computed on the one basis or the other. The variance is solely in the distribution of the burden.

We pass then to the second question whether the service charge is " unjust and unreasonable or unjustly discriminatory, regardless of the amount thereof." The statute prohibits a gas corporation from charging, demanding, collecting or receiving " from any person or corporation a greater or less compensation for gas * * * or for any service rendered or to be rendered or in connection therewith * * * than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions " (Public Service Comm. Law, sec. 65, subd. 2). Formal equality there indisputably is. The service charge is imposed, not on some only, but on all, and on all at the same rate. Discrimination, if it exists, must inhere in remoter incidents or consequences. We start with the recognition of the truth that perfect equality in operation as well as in form is not to be attained by any scheme of rates. Classification is not forbidden, if founded upon reason, and not upon caprice or favor. There are those who think that a schedule which does *not* impose a service charge is discriminatory, since it shifts upon some consumers the burden of carrying the others. Occasional hardships there will be with any plan. It is a question largely of degree. The argument against the charge seems to rest upon the assumption that unjust discrimination inheres in every rate that is not a flat or uniform rate for every foot of gas supplied. The scale of charges must not be graduated, it is said, so as to adapt the

payment to the cost. But that has never been the rule of rate making for public service corporations. Varying charges are not prohibited always and everywhere, but only varying charges for like services in substantially similar circumstances or conditions. The commuter does not pay the same rate as the occasional traveler. The shipper by carload is not charged as the shipper of a single package. Telephone rates per message are lowered as the number of messages increases (Cf. *N. Y. Telephone Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502). Charges for water vary with the quantity consumed (*Silkman* v. *Bd of Water Commissioners, Yonkers*, 152 N. Y. 327, 330). If there was ever doubt that rates for gas are subject to like tests, the doubt has been removed by recent amendments of the statute. " Nothing in this chapter shall be taken to prohibit a gas corporation or electrical corporation from establishing classifications of service based upon the quantity used, the time when used, the purpose for which used, the duration of use or upon any other reasonable consideration, and providing schedules of just and reasonable graduated rates applicable thereto. No such classification, schedule, rate or charge shall be lawful unless it shall be filed with and approved by the commission, and every such classification, rate or charge shall be subject to change, alteration and modification by the commission " (sec. 65, subd. 5, Public Service Comm. Law, as amended by L. 1921, ch. 134, in effect March 30, 1921). " The commission shall have power to require each gas corporation and electrical corporation to establish classifications of service based upon the quantity used, the time when used, the purpose for which used, the duration of use and upon any other reasonable consideration, and to establish in connection therewith just and reasonable graduated rates and charges; and it shall have power, either upon complaint or upon its own motion, to require such changes in such classifications, rates and charges as it shall determine to be just and reasonable " (Public

Service Comm. Law, sec. 66, subd. 14, as amended by L. 1921, ch. 134).

With these provisions in force, we see no escape from the conclusion that a service charge, reasonably computed, and moderate in amount, does not involve *per se* an illegitimate discrimination between classes of consumers. Into the computation of this charge, we are not required to enter, except in so far as it may be thought to involve a rent for the use of meters. The question propounded to us in the submission is whether such a charge is unlawful " regardless of the amount thereof." We do not mean to suggest that the classification is one which the commission *must* accept. Considerations of advantage are to be weighed with those of inconvenience. The balance may be found to be in favor of other methods of graduation, of other groups and classes. That is a question calling for the exercise by the commission of its own judgment and discretion. The courts will not interfere with the conclusion except to safeguard the consumer against arbitrary power (*People ex rel. N. Y. & Queens Gas Co.* v. *McCall*, 219 N. Y. 84; affd., 245 U. S. 345). The business of rate making has been confided by the legislature to a body of experts with powers of inquiry and modification adequate to the task. We are not required either to approve or to condemn the wisdom of the plan adopted. We are concerned with power only.

The conclusion thus reached is confirmed with impressive force by the judgments of courts and commissions in other jurisdictions. Service charges have been sustained by the courts of Louisiana and Rhode Island (*State of Louisiana* v. *Sloan*, 139 La. 881; *Rivelli* v. *Providence Gas Co.*, (R. I.) 115 Atl. Rep. 461, Dec. 9, 1921). They have been sustained by public utilities boards in thirty-eight states (*Kinch* v. *Concord L. & P. Co.*, Public Utilities Reports, 1919 B, 884, N. H. Comm.; cf. *City of Hartford* v. *Hartford City Gas Light Co.*, P. U. R.

4

1920 F, 840, Conn.; *Sellersville* v. *Highland Gas Co.,*
P. U. R. 1920 A, 321, Penn.; *Matter of Ocean County
Gas Co.,* P. U. R. 1919 B, 874, N. J.; *Matter of City
Light & Traction Co.,* P. U. R. 1918 F, 949, Missouri).
A joint conference committee appointed by the New York
public service commission has recommended the adoption
either of service charges or of some analogous expedient
in New York.   Such commissions as have disapproved
the charge have put their rulings upon grounds, not of
power, but of expediency (*Matter of Portland Gas Light
Co.,* P. U. R. 1921 B, 675).   The result is a body of
expert opinion which may not lightly be disregarded
when classification is assailed as masking an arbitrary
preference.

We reach the third question, whether the service
charge constitutes " rent on a gas meter " within the
meaning of section 66 of the Transportation Corporations
Law (Cons. Laws, ch. 63).   This section is in substance a
re-enactment of a statute passed in 1868 (L. 1868, ch. 253),
long before the days of public service commissions.   In its
present form it reads as follows:   " No gas light corporation
in this state shall charge or collect rent on its gas meters,
either in a direct or indirect manner, and any person, party
or corporation violating this provision shall be liable to
a penalty of fifty dollars for each offense, to be sued for
and recovered in the corporate name of the city or village
where the violation occurs, in any court having juris-
diction, and when collected to be paid into the treasury
of such city or village and to constitute a part of the
contingent or general fund thereof."   The objection that
this statute has been violated would not, if it were sus-
tained, affect the service charge as a whole.   At the
utmost it would require a reduction slight in extent and
easily computed.

In estimating the expenses of the business chargeable
to the cost of service, the commission has included the
cost of installing meters (part of an item of $17,683)

and the cost of repairing them ($21,925). The gas company wished to add a return of eight per cent on its investment in the meters, and also a sum sufficient to repair the yearly depreciation, but these items were excluded. No other item has any relation to meters, except one which includes the cost of reading them, and which is obviously a payment not for a thing, but for a service. The aggregate of all the items entering into the computation of the charge is $373,794, which has been divided by 80,000, the number of subscribers, in order to arrive at the *per capita* apportionment.

We find no charge for rent within the meaning of the statute. Rent is the periodic return for the privilege of use (Seligman, Principles of Economics, pp. 205, 206; cf., with reference to the varying uses of the term, 2 Taussig, Principles of Economics, pp. 63, 124). The rental value of a machine when capitalized for a term which varies with durability of use is equal to the capital value or the price (Seligman, *supra*, p. 374). There may, of course, be rents that will not yield a profit, *i. e.*, a surplus over expenses, for the subject-matter may be incapable of earning an adequate return. None the less, profit within the limit of capacity is typically and normally the end and aim of the exaction. " The usual rule is that the rent of anything shall be somewhat in proportion to its cost or value " (HISCOCK, J., in *City of Buffalo* v. *Buffalo Gas Co.*, 81 App. Div. 505, 507). This thought is reflected in the ancient definitions. Rent " is a certain profit issuing yearly out of lands and tenements corporeal " (*Payn* v. *Beal*, 4 Denio, 405, 412, citing 2 Blackstone Comm. 41). " It must be a *profit;* yet there is no occasion for it to be, as it usually is, a sum of money; for spurs, capons, horses, corn and other matters may be rendered, and frequently are rendered by way of rent " (Blackstone, *supra*). We do not say that a charge, however small, may not be rent within the statute if imposed with that intention and under an

agreement that it shall be so regarded.  The measure of the charge and the mode of computation are none the less relevant considerations when the question is whether a burden imposed under another name and ostensibly for a different purpose is merely rent in disguise. The legislature in forbidding rents, must be presumed to have had in view the typical and normal.  Here the burden of the consumer, so far as affected by the meters, is limited to the cost of installation and repair.  The charge is not intended as an equivalent for the value of the use. It is compensation for expenses that must be incurred to put the meters in such a condition that the use may be enjoyed.  True it is that the individual must pay his monthly quota though his own meter has been neither changed nor repaired during the month, just as he must pay his quota for the maintenance of service pipes and their accessories though his own may have remained intact.  In the long run, however, and on the average, what he pays is counterbalanced by what he receives. If he must contribute to a fund to preserve the distributing agencies for others, they must contribute on their part to preserve like agencies for him.

We think it would be a strained and forced construction that would find in the distribution of such expenses among the entire body of consumers the quality of rent. Such license of construction is surely not permissible to extend to doubtful situations the prohibitions of a penal statute ( *U. S.* v. *Wiltberger*, 5 Wheat. 76; *U. S.* v. *Bathgate*, 246 U. S. 220; *Burks* v. *Bosso*, 180 N. Y. 341, 344).  The bailee of a machine or the occupant of a dwelling does not pay rent for the use when he repairs at his own expense (*Bien* v. *Bixby*, 18 Misc. Rep. 415, 418).  His position is not different when he promises reimbursements for repairs made in the first instance out of the pocket of the owner.  Rent is not to be collected " either in a direct or indirect manner " (Transp. Corp. L. sec. 66), but the prohibition must be kept within the

limits of common speech and understanding.  Give the words their uttermost extension, and a gas corporation would be unable to include its meters or the cost of upkeep in reckoning the price of gas, since a substitute for rent might be found in an increase of the price.  Such an extension would involve a conflict, if not with constitutional rights, at all events with other statutes which assure a reasonable and fair return (Public Service Comm. Law, sec. 72).  Some restraint there must be upon apparent generality.  No one would be willing to say that money paid to keep the service pipes in repair should be classified as rent, direct or indirect.  Payments made to preserve other appliances or facilities do not stand upon a different basis.  As long as the aggregate contributions do not exceed the aggregate expense, the character of the payments is not affected by their *per capita* division.  A does not pay rent for the use of *his* facilities because required to contribute to the cost of maintaining B's.  B does not pay rent for the use of *his* because required to contribute to the cost of maintaining A's.  The method of apportionment is, indeed, a circumstance to be considered in determining whether the charge is reasonable and fair.  Division must follow lines that will lead, at least upon the average, to results of equality and justice.  If such an average is attained, division *pro rata* will not turn a payment for a service into a payment for a thing.  The company's books, kept under the supervision of the commission, and subject to continuing inspection (Public Service Comm. Law, sec. 66, subds. 4 and 9) show, month by month, the expenses of its business.  If it shall hereafter appear that the expenses as allowed by the commission are too high, a different question will be before us.  We do not now determine whether a service charge, in so far as it is affected by the maintenance of meters, may include an element of profit.  We are satisfied that it is not rent, within any fair construction of a penal statute, when profit is excluded.

A final consideration remains to be noted. The query was propounded in the court below, what would happen to the consumer in the event that payment was not made? The court answered the query by saying that the meter would be removed. This was thought to prove that the charge must be regarded as equivalent to rent, even though it omitted the cost of installation and repair. Such an argument proves too much. If the price of gas is not paid, there will be the same result. The meter is removed whenever the customer is in default (Transp. Corp. Law, sec. 65). If the right to remove is the concomitant of rent and nothing else, the company makes a charge for rent when it makes a charge for anything.

The judgment should be reversed, and judgment directed in favor of the defendant, with costs in both courts.

Pound, J. (dissenting). I think that the service charge as described herein is discriminatory and an indirect method of collecting rent for meters. The fact that all are charged alike for widely different degrees of service creates the discrimination. A uniform compensation for service is provided when the service to consumers is unequal. The payment is distributed *pro rata* among the consumers and so bears no relation to the actual value of the services rendered. It is an arbitrary imposition in addition to the charge for gas consumed. A consumer to whom no service is rendered, for whom no installation or repair work is done, except nominal services for reading meters, sending out bills and the like, ready and able to pay for all gas consumed and all services actually rendered to him, may be deprived of his supply of gas if he refuses to pay the service charge. If he uses no gas, he certainly requires little or no service; if he uses much gas and requires no service, the charge is the same as for him who has much service.

Again what is this charge but an indirect charge for

rent of a meter within the meaning of section 66 of the Transportation Corporations Law? It is not economic rent but it is neither a commodity charge nor a charge for services actually rendered. It is a uniform charge for the privilege of having the gas pass through the meter. If it is not rent, it is what rent would be and the equivalent of rent. It is a flat charge for the privilege of using gas as distinguished from actual services rendered or gas consumed.

I dissent.

HISCOCK, Ch. J., McLAUGHLIN, CRANE and ANDREWS, JJ., concur with CARDOZO, J.; POUND, J., reads dissenting memorandum, with whom HOGAN, J., concurs.

Judgments revered, etc.