UNITED STATES LIGHT & HEAT CORPO-RATION v. NIAGARA FALLS GAS & ELECTRIC LIGHT CO. et al. (HAMANN et al., Interveners).

No. 150.

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1931.

Charles G. Blakeslee, of Albany, N. Y. (Russell B. Burnside, of Albany, N. Y., of counsel), for appellant Public Service Commission of New York.

Parker & Parker, of Niagara Falls, N. Y. (Alan V. Parker, of Niagara Falls, N. Y., of counsel), for defendant in error. United States Light & Heat Corporation.

Dudley, Gray & Phelps, of Niagara Falls, N. Y. (Alpheus R. Phelps, of Niagara Falls, N. Y., of counsel), for defendant in error Adolph M. Hamann.

Williams & Williams, of Buffalo, N. Y. (Harry D. Williams, of Buffalo, N. Y., of counsel), for Niagara Falls Gas & Electric Light Co.

Arthur J. W. Hilly, Corp. Counsel, Solicitor for the City of New York, amicus curiæ (M. Maldwin Fertig, Harry Hertzoff, and Judson Hyatt, all of New York City, of counsel).

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The plaintiff has a place of business in the city of Niagara Falls, where it is a user of fuel and claims that the use of gas by it would be more economic, efficient, and useful. This city is served with gas by the Niagara Falls Gas & Electric Light Company, and the plaintiff, while not claiming to be a consumer of gas, contends that it has a property right to the service of the gas company in that city. Hamann, a consumer of gas, who was permitted to intervene by court order, owns a private residence in Niagara Falls, where he uses gas. Both seek to have chapter 898 of the Laws of 1923 declared

unconstitutional, claiming that its enforcement deprives them of property without due process of law under the Fourteenth Amendment.

The bill of complaint alleges that the rates at which gas may be furnished, as prescribed by the orders of the Public Service Commission, are confiscatory of the property of the gas company; that the gas company may not change such rates except by filing with the commission a schedule of statements of proposed changes of rates; that the gas company filed with the commission a schedule of rates proposing to furnish gas in the city of Niagara Falls on a three-part rate plan; that the commission has issued orders forbidding the company to supply or distribute as under said plan. It alleges that there are six known bases for the sale of gas by public utility corporations: (1) Flat rate; (2) flat rate with service charge; (3) flat rate with a minimum bill; (4) block rate; (5) block rate with a minimum bill; and (6) three-part rate. After defining what is meant by these respective charges, the bill alleges that none of such bases is a correct basis or plan except the three-part rate plan; that the right to be furnished with gas is a property right of the plaintiff; that the furnishing of gas upon any other basis or plan than that of the three-part rate results in discrimination as between consumers; that certain consumers are required to pay more than their equitable proportion or share of the cost; and that they are deprived of their property without due process of law.

Subdivision 6 of section 65 of the Public Service Law (Consol. Laws N. Y. c. 48), provides:

"6. *Service Charges Prohibited.* Every gas corporation shall charge for gas supplied a fair and reasonable price. No such corporation shall make or impose an additional charge or fee for service or for the installation of apparatus or the use of apparatus installed."

The claim of confiscation is made by the plaintiff upon the theory that it belongs to a class of consumers of gas in the city of Niagara Falls; that its property is confiscated as one of this class because its right to such service is taken away. Furthermore, that this provision of the Public Service Law impairs the obligation of the contract between the state and the Niagara Falls Gas & Electric Light Company and the people of the city of Niagara Falls, in violation of article 1 (§ 10) of the Constitution of the United States.

The three-part rate has three charges: (1) The customer's charge which consists of expenses of bookkeeping, billing, collecting, setting, removing, and repairing meters, gratuitous complaint service, office rent, meter reading, and a part of the fixed charges on the physical property. This charge is intended to be made regardless of whether the gas is used in small or large quantities or not at all. (2) A demand charge which consists of that part of the company's expenses incidental to providing and maintaining a production, transmission, and distribution system of sufficient capacity to render service as required. This charge consists of the remainder of the fixed charges, such as interest, taxes, and depreciation on the necessary plant and part of the operation and maintenance expense of the physical property. The charge is distributed among the customers in proportion to the demand made upon the company by each customer and in the proportion which each customer contributes toward the creation of the so-called demand expense. (3) The gas charge which is the cost of the company's production, transmitting and distributing the gas, and is proportional to the amount of gas handled. It represents the cost of the gas plus a certain proportion of the cost of maintaining and operating the transmission and distribution system. It is said to be the cost of the commodity delivered as distinguished from the cost of the service. Each of these items must of necessity enter into the calculation of what is the company's fair return.

The Public Service Commission has answered admitting its prohibition against such service charge, and alleges that it has fixed by order the rates to be charged by the gas company.

The gas company has filed an answer admitting, in substance, all the allegations of the complaint, and prays for relief as follows:

"Wherefore, this defendant prays the court if it shall see fit to grant any of the prayers of the plaintiff herein, that it grant also that part of the prayer of the plaintiff, which is found in such part of Subsection 'D' of the plaintiff's prayer as prays that the Public Service Commission of the State of New York, be enjoined from visiting any penalty on this defendant for its violation of the said orders above referred to and said chapter 898 of the Laws of 1923, or any provision or provisions thereof, and that portion of Subsection 'E' of the said prayer which prays that the City of Niagara Falls, the

Mayor and Council thereof and the Public Service Commission be enjoined from interfering with the collection of a reasonable rate which should be based on a Three-Part Rate, or make such other provisions as your Honorable Body may consider to the best interest of equity and the protection of this defendant in its decree."

The city of Niagara Falls has answered supporting the Public Service Commission's position.

The proofs adduced in behalf of the plaintiff were apparently supplied by the gas company. The gas company has not filed a counterclaim or cross-bill, as it might have under rule 30 of the Equity Rules (28 USCA § 723).

The Public Service Commission order under which the gas company rates were fixed was dated December 28, 1920. No complaint was offered against such rate by the gas company; no court proceedings were instituted; nor was a claim made of the violation of its constitutional rights because of the confiscation of its property. On July 17, 1923, and February 15, 1924, the gas company filed new tariff schedules proposing its three-part rate. The commission, on October 17, 1923, and December 8, 1924, disapproved these proposed charges, and refused to receive them for filing. Neither the plaintiff nor the intervener Hamann has complained of the rates as fixed by the commission under the several provisions of the Public Service Law.

Section 65 of the Public Service Law (Consol. Laws N. Y. c. 48) requires safe and adequate service and just and reasonable charges, and forbids unjust discrimination as well as unreasonable preferences. It provides a regulatory scheme relating to gas and electric utility companies' charges, all under the supervision of the Public Service Commission. It permits the utilities to establish classifications of service based upon the quantity used, the time when used, the purposes for which used, the duration of use, and upon any other reasonable considerations, and provides for schedules as to just and reasonable graduated rates applicable thereto; but it forbids in subdivision 6, as quoted above, service charges. Section 66 grants power to the commission with respect to the general supervision of utility corporations; subdivision 5 makes provision for complaints and hearings thereon as to charges and discriminations; subdivision 14 authorizes the commission to fix such rates and charges as are just and reasonable, and permits it to establish classifications of services based upon the quantity used, the time when used, the purpose for which used, the duration of use, and any other reasonable consideration. By section 71 the commission is authorized to hear complaints as to quality and price of gas. It provides that, upon the complaint in writing of not less than 25 customers or purchasers of gas, or upon complaint of the gas corporation, the commission shall investigate as to the cause for such complaint. By section 72 provision is made for the hearing on such complaint and authorizes the commission to make orders fixing the price of gas or electricity or requiring improvement of service. Thus the plaintiff, if aggrieved, might have joined others, 25 in number, and have been heard and afforded relief under the provisions of this law. Matters respecting rates, charges, or classification of service might have been considered. These provisions of the state law providing for regulation of rates, charges, and service are presumptively valid and constitutional. Chicago, Milwaukee, etc., Ry. Co. v. Tompkins, 176 U. S. 167, 20 S. Ct. 336, 44 L. Ed. 417; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

The plaintiff's and Hamann's right to be served with gas is dependent upon section 62 of the New York State Transportation Corporations Law, now section 12 of the present Transportation Corporations Law (chapter 762 of the Laws of 1926; Consol. Laws N. Y., c. 63, § 12). It provides that, upon application in writing by the owner or occupant of a building or premises within a hundred feet of any main laid by a gaslight corporation or wires of the electric light corporation, and upon payment by him of all moneys due from him to the corporation, the corporation shall supply gas and electric light. Except for this provision of law, there is no duty or obligation on the part of the gas company to furnish service to any applicant. Tismer v. N. Y. Edison Co., 170 App. Div. 647, 156 N. Y. S. 28; People ex rel. N. Y. Edison Co. v. Public Service Comm., 191 App. Div. 237, 181 N. Y. S. 259, affirmed 230 N. Y. 574, 130 N. E. 899. And since the Public Service Law became effective, jurisdiction has been vested in the commission to require gas and electric light companies to extend their plants to territories in which they have franchise rights when such extensions are reasonably required. New York ex rel. Woodhaven Gas Co. v. Public

Service Comm., 269 U. S. 244, 46 S. Ct. 83, 70 L. Ed. 255.

A consumer or prospective consumer of gas in the territory has only such right as the Public Service Law gives him to complain of charges or service. As a general rule, a seller may fix the price of his product at what he pleases or dispose of it at any price, but the courts have determined that, where property is affected with a public interest, it is no longer juris privati; it becomes clothed with a public interest when used and sold in a community under a franchise grant. Thus the gas company's business becomes subject to the Public Service Law by reason of the interest which the public has. It must submit to the control by the Public Service Commission for the common good to the extent which it has clothed its property with public interest. But a citizen has no vested rights in statutory privileges or exemption. Cooley, Constitutional Limitations (8th Ed.) 792. This gas company became bound to furnish gas within the city of Niagara Falls by reason of the Public Service Law. The consumer was not obliged to purchase gas; he was privileged to do so. A private right may be interfered with so long as it is not vested (Cooley, Constitutional Limitations [8th Ed.] 749), and a right is not vested unless it is something more than a mere expectation as may be based upon an anticipated continuation of the present general laws (Brooklyn Union Gas Co. v. City of New York, 50 Misc. Rep. 450, 100 N. Y. S. 570).

But it is said that the state Court of Appeals, in Matter of International Railway Co. v. Rann, 224 N. Y. 83, 120 N. E. 153, held substantially that the right to be served with gas is a property right. There the street railway system furnished service to passengers by three corporations, each operating on its own lines, charging passengers an extra fare for transferring to the cars of either of the other lines. An agreement was made between the city and the several companies to provide a general transfer system between the three companies and to fix a rate of compensation which they should pay the city for the franchises. This was ratified by the state Legislature (Laws of 1892, c. 151), and was valid (section 93 of the Railroad Law [Laws 1890 c. 565 as amended by Laws 1901, c. 494]). It regulated the relations between the city and the companies and the companies agreed to charge only 5 cents for transporting passengers from any point on any of the lines to any other point on any of the other lines by the most direct route. Transfer charges were abolished. The plaintiff railway company which became a successor of the three former companies sought a consent of the city for a change, and the application was for a writ of mandamus directing the corporation counsel of the city to sign a stipulation of discontinuance of the franchise tax certiorari proceedings instituted by the railway company. The point at issue arose over the construction of a certain provision of the charter of the city of Buffalo. It provided that:

"No resolution of the council, appropriating money other than for regular payrolls or to meet any legal obligation of the city, and no resolution incurring or providing for the incurring of any expenses, other than for repairs immediately necessary, * * * and no resolution disposing of any property or rights of the city, shall become effective until 30 days from its adoption; and its operation shall be suspended and it shall be reconsidered and submitted to the electors, in the same manner as in this section provided for the suspension, reconsideration, and submission of any ordinance."

The court held that the city was the real party to the agreement; individual inhabitants were not nor could they become parties thereto; they merely have the benefit of the right under the agreement while it remains in force. The rates which the court was considering were not common-law rates, but rates arising under the express agreement between the city and the railway company and later ratified by the Legislature.

The state Court of Appeals has sustained the power of the commission to regulate rates where it has done so within the scope of its determination. People ex rel. Garrison v. Nixon, 229 N. Y. 575, 128 N. E. 255.

The plaintiff and the intervener Hamann have no property rights which are affected by subdivision 6 of section 65 forbidding service charge. Their right to service exists only because of the statute referred to. It is not such property right as may form the basis of a claim for confiscation or discrimination. If there be an exercise of arbitrary power against the consumer and wrongful enforcement by the commission of the Public Service Law, a remedy is afforded under the provisions referred to for the consumer to lodge his complaint, obtain a hearing and redress. City of Rochester v. Rochester Gas Co., 233 N. Y. 39, 134 N. E. 828. The gas company likewise has a remedy if its property is being confiscated by first proceeding

under the provisions of the Public Service Law, and if, after such proceedings, it feels aggrieved, it may test its complaint in proceedings in the state court or by suit for an injunction based upon a claim of confiscation of its property without due process of law. It cannot obtain this relief in this suit by merely admitting substantially all the allegations of the complaint and asking relief as above referred to. The bill should be dismissed, with costs.

Decree reversed.