■ NEW YORK STATE ELECTRIC & GAS CORPORATION, Respondent, v STEUBEN RURAL ELECTRIC COOPERATIVE, INC., et al., Appellants.—Judgment unanimously affirmed, with costs. Memorandum: We agree with the trial court that, in the particular factual context presented in this record *(see, Adams-Marquette Elec. Coop. v Public Serv. Commn.,* 51 Wis 2d 718, 727, 188 NW2d 515, 519), defendant Steuben Rural Electric Cooperative, Inc. (Cooperative), in supplying electric power to the newly constructed garage-warehouse of defendant Steuben L. P. Gas Company, Inc. (L. P. Gas), is furnishing service to "premises or building" being served by plaintiff, New York State Electric & Gas Corporation (NYSEGC), within the meaning of such phrase in Rural Electric Cooperative Law § 14 (d). Thus, Cooperative was properly enjoined from continuing to provide such service and directed to remove its poles, wires and other equipment and fixtures.

NYSEGC is currently providing, and has provided for some time, electric service to the L. P. Gas office building located on property south of County Route 129 in the Town of Woodhull and leased from C. E. Davis and Winifred Davis. Defendants do not contend that when NYSEGC commenced providing this service, rural electric cooperative power was available to the office building. The small rectangular parcel on which the garage-warehouse was constructed is also leased from the Davises (for a term of 99 years) and adjoins the office building premises on the west. This parcel is situated 63 feet from the office building, and the office building and garage-warehouse are approximately 67 feet apart. For Cooperative to furnish service to the garage-warehouse structure, it was necessary for it to extend its existing lines northerly approximately 3,100 or 3,200 feet.

In affirming the court's finding that the garage-warehouse and the office building are part of the same complex of "premises or building" within the meaning of the statute, we find it significant that the two parcels on which the buildings are located are adjoining and under lease to the same party, that the two buildings are in close proximity to each other, and that, as the trial court noted, the two buildings have a common owner and function as parts of the same enterprise.

We do not find *Moore v Champlain Elec. Co.* (88 App Div

289) or *Jones v Rochester Gas & Elec. Co.* (7 App Div 465) persuasive. These cases involve statutes (Transportation Corporations Law §§ 65, 66 [L 1890, ch 566]) imposing penalties on utilities for failure to provide service, and, as noted in *Moore v Champlain Elec. Co. (supra,* p 293), it is "a familiar rule that statutes imposing penalties should be construed strictly in favor of the party against whom they are given *(Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 7)". The aim of the Rural Electric Cooperative Law, as contradistinguished from that of the statutes in the above-cited *Moore* and *Jones* cases, was not to provide a means of compelling public utilities to provide service to customers within a certain distance of their lines but rather to provide a statutory framework under which rural electric cooperatives could be organized for the purpose of furnishing, with the aid of low-interest Federal REA loans, electric service and facilities to 45,000 unserved farms in New York State *(see,* Governor's memorandum, Rural Electric Cooperative Law, McKinney's Cons Laws of NY, Book 50-A, p 1). The public policy underlying the passage of the Rural Electrification Administration Act is described by the Florida Supreme Court in *Tampa Elec. Co. v Withlacoochee Riv. Elec. Coop.* (122 So 2d 471, 473, n 6 [Fla], *cert denied* 377 US 952) thus: "It is a matter of common knowledge that the real purpose to be served in the creation of REA was to provide electricity to those rural areas which were not being served by any privately or governmentally owned public utility. *It was not intended that REA should be a competitor in those areas in which as a matter of fact electricity is available by application to an existing public utility holding a franchise for the purpose of selling and serving electricity in a described territory"* (emphasis added). *(See also, Public Serv. Co. v Hamil,* 416 F2d 648, 654, *cert denied* 396 US 1010; *Escambia Riv. Elec. Coop. v Florida Public Serv. Commn.,* 421 So 2d 1384, 1385 [Fla], *cert denied* 461 US 912.)

In our opinion, the court's interpretation of the phrase "premises or building" in Rural Electric Cooperative Law § 14 (d), in the factual situation presented, is consistent with the public policy underlying the Rural Electric Cooperative Law and with the particular purposes of section 14 (d) of avoiding duplication of services and of protecting private utilities from loss of their existing customers or of potential customers to whom they would reasonably and in the ordinary course be expected to furnish service.

The issues pertaining to the right of NYSEGC to serve the garage-warehouse through an implied easement over the Da-

vis property or, if necessary, by exercising its power of eminent domain pursuant to Transportation Corporations Law § 11 (3-a) are properly subjects of future proceedings. Accordingly, we do not reach such questions and observe only that the evidence supports the court's finding that lines could be extended to the garage-warehouse without conflicting with the covenant in the lease prohibiting the erection of poles or lines between that structure and the Davis residence. (Appeal from judgment of Supreme Court, Steuben County, Purple, J.—declaratory judgment.) Present—Dillon, P. J., Hancock, Jr., Callahan, Pine and Schnepp, JJ.