CHARLES FOSMIRE, Appellant, *v.* NATIONAL SURETY COMPANY, Respondent.

Third Department, September 10, 1919.

Contract — guaranty and suretyship — agreement of surety that municipal contractor will comply with Labor Law and pay laborers — when laborer may maintain action on bond of surety — promise to pay third person.

Where the surety of a contractor engaged in improving a State highway gave a bond to the State providing that the contractor would pay " the wages stipulated and agreed to be paid to each and every laborer employed by said principal or by his agents," and the contract with the State required the contractor to comply with section 3 of article 2 of the Labor Law, the agreement with the surety inures to the benefit of a laborer employed by the contractor who subsequently became insolvent and unable to pay, and said laborer may maintain an action against the surety.

The case of *Seaver* v. *Ransom* (224 N. Y. 233) has extended the doctrine of *Lawrence* v. *Fox* (20 id. 268) to public contract cases where the bond runs to the State, and the municipality seeks to protect its inhabitants by covenants for their benefit.

*It seems*, that said doctrine is thereby extended to practically every case where a promise is made to one person for the benefit of another, provided only it be meritorious and equitable to enforce such a promise.

APPEAL by the plaintiff, Charles Fosmire, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Ulster on the 27th day of February, 1919, denying his motion for judgment on the pleadings, consisting of a complaint and the demurrer thereto, and dismissing the complaint.

From the complaint it appears that the firm of Wagner & Braun made a contract with the State of New York for the improvement of a State highway in the village of Saugerties, agreeing in said contract that they would comply with section 3 of article 2 of the Labor Law and with the lawful direction of the officers, agents or representatives of the State; that Wagner & Braun and the defendant herein, National Surety Company, executed their bond to and for the benefit of the People of the State of New York which bond was conditioned among other things for the payment of " the wages stipulated and agreed to be paid to each and every laborer employed by the said principal or by his agents;" that Wagner & Braun entered upon the performance of said contract and in such performance employed the plaintiff and another whose claim has been assigned to the plaintiff as laborers for daily wages and that such laborers performed labor under said contract for Wagner & Braun who thereafter became financially insolvent and unable to pay for said labor. To such complaint the defendant has demurred for insufficiency.

*Frederick E. W. Darrow,* for the appellant.

*William J. Griffin [Milfred O. Garner* of counsel], for the respondent.

COCHRANE, J.:

In the case of *Seaver* v. *Ransom* (224 N. Y. 233) beneficiaries entitled to sue on contracts made for their benefit but to which they were not parties were classified in groups and it was remarked by the court: " It may be safely said that a general rule sustaining recovery at the suit of the third party

would include but few classes of cases not included in these groups, either categorically or in principle." The third group was described as " the public contract cases [*Little* v. *Banks*, 85 N. Y. 258; *Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Smyth* v. *City of New York*, 203 N. Y. 106; *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, 48; *Rigney* v. *N. Y. C. & H. R. R. R. Co.*, 217 N. Y. 31; *Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 83; *cf. German Alliance Ins. Co.* v. *Home Water Co.*, 226 U. S. 220] where the municipality seeks to protect its inhabitants by covenants for their benefit." In letter and in spirit I think this case falls within that classification.

The defendant relies strongly on the case of *Eastern Steel Company* v. *Globe Indemnity Company* (185 App. Div. 695). To my mind that case is clearly distinguishable. There the bond ran not to the State but to the city of New York and it was sought to be enforced by one who had furnished not labor but material for the contractor. It was stated in the opinion: " In order for this bond to be enforcible against the surety it would be necessary for the city to be under some duty or obligation to the materialmen." I think it needs little argument in support of the proposition that the State recognizes and assumes a higher duty and responsibility toward its laborers than does a city toward a subcontractor furnishing material to its contractor. I cannot better make clear my meaning than by quoting from the opinion of Judge CARDOZO in *People* v. *Crane* (214 N. Y. 154): " ' The relief of the poor, the care of those who are unable to care for themselves, is among the unquestioned objects of public duty.' (BREWER, J., in *State ex rel. Griffith* v. *Osawkee Township*, 14 Kan. 421.) The modern State everywhere is mindful of that duty. * * * Everywhere throughout the world the State, in its relation to the laborer, is assuming a larger obligation; * * *. In our own country the workmen's compensation laws that have been adopted in many States are phases of the same world-wide movement. We are not concerned at this time with the validity of these measures for the alleviation of the laborer's lot. We mention them as illustrations of an expanding consciousness in the modern State that relief against unemployment, both after the event and before it, is part of the State's

function.  *  *  *  In a real and substantial sense, it is the
money of the State that is paid to the laborers, though the
distribution is made through the medium of contractors.  That
money constitutes the fund out of which the wages of laborers
are payable.  This is not only true as an economic and social
fact.  It is true also as a statement of the legal rights of those
concerned.  The State (Lien Law [L. 1909, ch. 38], sec. 5)*
has given to any laborer employed by a contractor in the
construction of a public improvement, a lien for the value of
his labor upon the moneys of the State applicable to that
improvement.  The State has thus defined the channels
through which the payment must be made.  It has assumed a
direct obligation not only to its own employees, but also to
the employees of contractors on its works.  To say that the
latter class of employees receive, not the State's moneys, but
those of the contractors, is to put form above substance.  The
great problems of public law do not turn upon these nice
distinctions.  The fundamental powers of the State and the
fundamental rights of man are built upon a broader basis.
The truth and substance of the situation is that the con-
tractor's employees are doing the State's work, and are paid
out of the State's moneys; and this truth ought not to be
obscured by distinctions between contractors and servants
established to fix the gradations of civil liability.  *  *  *
It is now perceived that all persons engaged on the public
works, from the highest officers to the lowest laborers, through
all the gradations of contractors and subcontractors, are, in a
very vital sense, in the service of the State.  The State has
a legitimate concern in the selection of the men to be employed
from one extreme of the official hierarchy to the other."  As
still further indicative of the concern which the State has
for the welfare of its laborers reference may be had to section
3 of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909,
chap. 36], as amd. by Laws of 1916, chap. 152), wherein it is
declared that laborers upon all public works shall receive the
prevailing rate of wages and that every contract for such work
" shall contain a stipulation that each such laborer, workman

* See Consol. Laws, chap. 33 (Laws of 1909, chap. 38), § 5, as added by
Laws of 1911, chap. 873.  Since amd. by Laws of 1916, chap. 507.— [REP.

or mechanic, employed by such contractor, subcontractor or other person on, about or upon such public work, shall receive such wages herein provided for.'' The contract between the State and the contractors in the instant case contains such stipulation and the obligation of the surety, the defendant herein, bound it for the faithful performance of this contract by the contractors.

Nor does the case of *Village of Argyle* v. *Plunkett* (226 N. Y. 306) militate against the views here expressed, *first*, because it was held that the bond executed by the surety in that case was not conditioned for the payment by the contractor of his obligations; *second*, because if it was so conditioned the contract provided for an exclusive remedy which did not consist in an action on the bond, and *third*, because the plaintiff in that action, the village, could not make the unpaid claims of others the basis of an action.

Within the doctrine of *Seaver* v. *Ransom* (*supra*) I think this action may be maintained. Indeed the logical effect of the opinion in that case is to extend the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) to practically every case where a promise is made to one person for the benefit of another, provided only it be meritorious and equitable to enforce such a promise.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs, with leave to the defendant to serve an answer within twenty days on payment of such costs.

All concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to the defendant to serve an answer within twenty days on payment of such costs.