MEMORANDUM DECISION AND ORDER
 

 SPATT, District Judge.
 

 In this action for specific performance of a contract for sale of real property, the defendants Leeward Ventures (“Leeward”), Barry
 
 *1022
 
 Relinger (“Relinger”) and Gary A. Panusuk (“Panasuk”) (collectively “the defendants”) moved the Court for an order dismissing the action, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. In the alternative the defendants moved for an order dismissing the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action upon which relief may be granted.
 

 The plaintiff Leonard Maggio (the “plaintiff’ or “Maggio”) cross moved for an order consolidating this action with an action entitled
 
 Federal Deposit Insurance Corp. as receiver of Citytrust v. Leeward Ventures, David Osiecki, State of New York, Town of Hempstead, “John Doe
 
 #1”
 
 through “John Doe #10”, the last ten names being fictitious persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint and herein sought to be foreclosed,
 
 CV 91-4671 (ADS) [hereinafter “the foreclosure action”].
 

 I. BACKGROUND
 

 A.
 
 The foreclosure action
 

 The story of the present law suit begins with another. On November 27, 1991, the Federal Deposit Insurance Corporation as receiver of Citytrust (“FDIC”), commenced an action seeking (1) foreclosure of mortgaged premises located at Bayberry Avenue and Whaleneck Drive in the Town of Hemp-stead, County of Nassau (the “Blue Water Marina”) and (2) deficiency judgments against Leeward Ventures and David Osiecki (“Osiecki”). In the foreclosure action, this Court’s jurisdiction was based upon 12 U.S.C. § 1819(b)(2)(A), which provides that civil actions in which the FDIC is a party are deemed to arise under the laws of the United States, as well as diversity of citizenship in that Citytrust was a Connecticut banking institution and the defendants were both residents of New York.
 

 In connection with a loan to purchase the Blue Water Marina, Leeward executed a promissory note date December 21, 1986 in the principal sum of $3,000,000.00 (three million dollars) plus interest, secured by a mortgage, in favor of Citytrust. The promissory note was also secured by the personal guaranty of the defendant Osiecki, dated December 21, 1986. The promissory note matured on December 21, 1990, at which time City-trust demanded payment and, according to the complaint in the foreclosure action, Leeward and Osiecki defaulted.
 

 On August 9, 1991, the FDIC, acting pursuant to 12 U.S.C. § 1821, took possession of the assets of Citytrust and succeeded to its rights under the promissory note, mortgage and personal guaranty executed by Leeward and Osiecki. On November 27, 1991, the FDIC commenced CV 91-4671 to foreclose the mortgaged premises and obtain a deficiency judgment against Osiecki (“the foreclosure action”). In February of 1995, the FDIC assigned the mortgage, promissory note and cause of action asserted here to Barry Relinger and Gary A. Panasuk, who were substituted as party plaintiffs in the foreclosure action.
 

 The parties entered into a settlement stipulation and Consent Order dated December 4, 1992, which was modified by a subsequent Consent Order dated January 9, 1993 (“the Consent Orders”), appointing Leonard Maggio (“Maggio”) as receiver of the mortgaged premises. Upon entry of the first of the Consent Orders, the foreclosure action was closed. The Court retained jurisdiction over the case for the purpose of enforcing the terms of the settlement agreement. The Consent Orders provided, among other things, that (1) the total amount due under the promissory note was $4,038,834.38; (2) David Osiecki would be released from his obligations under the guaranty for a sum of $60,000.00, to be paid on or before January 31, 1993; (3) an $80,000.00 Leeward bank account balance would be applied to reduce the defendants’ obligations; and (4) the proceeds received from a contract to sell the mortgaged premises would be assigned to the FDIC. The Consent Orders provided that Maggio would serve as temporary receiver until the conclusion of the foreclosure action or until title to the mortgaged premises was transferred pursuant to the contract for sale of the premises that is referred to in
 
 *1023
 
 the December 4, 1992 Order. Annexed as Exhibit “A” to the December 4,1992 Order is a copy of that contract. The purchaser under the contract is Leonard Maggio.
 

 Since the foreclosure action was closed in 1992, the Court’s intervention has been sought in connection with several matters. First, in a letter dated January 11, 1995, counsel for the FDIC alleged that David Osiecki failed to comply with the terms of the Consent Orders. Counsel advised the Court on March 2, 1995, that the FDIC agreed not to compel Osiecki and Leeward to transfer the property, which transfer was resisted by the defendants because of alleged adverse tax consequences resulting from bankruptcy proceedings.
 
 See
 
 Transcript of March 2, 1995 conference, at 6-7. At that time, counsel for Osiecki and Leeward noted that the FDIC or its successor in interest also has the option to foreclose upon the property.
 
 See id.
 

 The second intervention by the Court since the foreclosure action was closed was precipitated by a letter dated February 15, 1995 from counsel for Leonard Maggio. That letter alleged that the defendants Leeward and Osiecki had violated the terms of the Consent Orders by refusing to cooperate in the transfer of the premises to Maggio. Maggio claimed that he was a third party beneficiary of the Consent Orders, based on a provision that gives the FDIC, among other remedies upon default of the agreement, the option to compel transfer of the premises. The Court held another conference on March 2, 1995, at the conclusion of which the parties were directed to attempt to resolve the matters among themselves and advise the Court of their progress. The docket sheet in this action does not reflect that any such progress report, or other communication regarding the alleged violations of the Consent Order, was submitted to the Court. Apparently an agreed upon resolution to the matter was not reached because on April 13, 1995, Maggio commenced the present action in the Federal Court to compel specific performance of alleged agreements to sell and convey the Blue Water Marina to him, naming the FDIC, Leeward Ventures, Barry Relinger and Gary A. Panasuk as defendants. At the time of the commencement of the present action, the FDIC had already assigned the mortgage, promissory note and cause of action to Re-linger and Panasuk.
 

 The Court’s third involvement with the foreclosure action subsequent to its closing concerned the final settlement of the receivership. As stated above, in February of 1995, the FDIC assigned the mortgage, note and cause of action relating to the Blue Water Marina to Relinger and Panasuk, who were then substituted as party plaintiffs in the foreclosure action. In an Order dated March 22, 1995, the Court terminated the Maggio receivership to permit Relinger and Panasuk to enter into possession of the subject property. Thereafter, Maggio moved the Court for order settling the receiver’s account, fixing and approving the commissions of the receiver, discharging the receiver and the undertaking of the surety, cancelling the undertaking, directing the receiver to disburse any funds in the receiver account and awarding attorneys fees associated with the costs of the motion. The FDIC, Osiecki, Relinger and Panasuk opposed the motion and alleged improper conduct by Maggio in managing the affairs of the Blue Water Marina. Due to the many issues of fact raised by the parties opposing the final settling of the receiver’s account, the Court denied Maggio’s motion, without prejudice, and referred the matter to United States Magistrate Judge Michael L. Orenstein to conduct a hearing and prepare a report and recommendation to the Court concerning the receiver’s requested commissions, attorneys fees and settlement of the receiver’s account.
 
 See
 
 March 17,1996 Order. The Court granted Maggio’s motion to retain legal counsel with regard to the further proceedings.
 
 See id.
 
 The Court noted the following in its March 17, 1996 Order: “Maggio was appointed as receiver on the stipulated consent application of the parties and not on the initiative of the Court.”
 
 Id.,
 
 at 2. Those proceedings before the Magistrate Judge are still pending.
 

 Several of the provisions of the Consent Orders in the foreclosure action are referred to in the present case, which, again, is Maggio’s contract action to compel specific performance, CV 95-1477. Paragraph Six, Sev
 
 *1024
 
 en and Nine of the Order dated December 4, 1992 provide:
 

 6. The Principal Defendants warrant and represent that defendant LEEWARD VENUTRES, LTD. has contracted to sell the premises against which the Mortgage sued upon by the FDIC as Receiver of Citytrust in this action is recorded (the “Premises”), pursuant to the terms of a certain contract of sale, which has been shown to Consolidated Asset Recovery Corporation, as agent for the FDIC as Receiver of Citytrust, and a true and complete copy of which is annexed hereto as Exhibit “A” (the “Contract of Sale”).
 

 7. The Principal Defendants hereby assign their rights to payment of all proceeds from the Contract of Sale, including any deposits, down payments and credit adjustments for taxes and other expenses, but not less than $2,000,000.00, to the FDIC as Receiver of Citytrust. The Principal Defendants shall notify the Purchaser described in the Contract of Sale (the “Purchaser”) in writing that all proceeds thereof have been assigned to the FDIC as Receiver of Citytrust, and direct the Purchaser to make all payments directly to the FDIC as Receiver of Citytrust. In the event that the Principal Defendants fail to notify the Purchaser of this assignment, the FDIC as Receiver of Citytrust may notify the Purchaser of this assignment in writing, and such notice will have the same force and effect as if given by the Principal Defendants. The FDIC as Receiver of Citytrust shall in its sole discretion apply all proceeds received from the Contract of Sale to reduce the indebtedness owed under the Lien Instruments. After receipt by the FDIC as Receiver of Citytrust of the payment of all proceeds of the Contract of Sale, together with the payments referred to in paragraphs 4 and 5 of this Stipulation, the FDIC as Receiver of City-trust shall provide the Principal Defendants and the Purchaser with an appropriate release of the Mortgage held by the FDIC as Receiver of Citytrust upon the Premises.
 

 9. In the event that the closing upon the Contract of Sale does not occur by December 30, 1992, the FDIC as Receiver of Citytrust, if it so elects and in its sole discretion, without further notice to the Principal Defendants, with the exception of pursuing a deficiency judgment against Osiecki, unless DAVID OSIECKI has committed fraud to induce the FDIC as Receiver of Citytrust to enter into this stipulation, may: (a) proceed
 
 ex parte
 
 with all further proceedings herein, including obtaining an order of reference, conducting a referee’s hearing, entering final judgment of foreclosure and sale for the amount due hereunder pursuant to the Lien Instruments, and auctioning the premises at a judicial sale; or (b) compel the Principal Defendants to convey the Premises by deed-in-lieu of foreclosure to the FDIC as Receiver of Citytrust, its nominee or a designated third party; or (c) compel the Principal Defendants to sell the Premises at a commercial auction. None of these alternative transactions shall be considered exclusive of the others, and the FDIC as Receiver of Citytrust may at any time, whether it has or has not elected to pursue one of the alternative transactions, demand that the Principal Defendants perform under one of the other alternatives.
 

 December 4, 1992 Consent Order, at 4-7.
 

 B.
 
 The contract action
 

 On April 13, 1995, Leonard Maggio commenced this action to compel specific performance of an alleged agreement to sell him the Blue Water Marina. The defendants named in the original complaint were the FDIC as receiver of Citytrust, Leeward Ventures, Ltd., Barry Relinger and Gary A. Panusuk. The Court’s jurisdiction was based on 12 U.S.C. § 1819(b)(2)(A) by virtue of the FDIC being a party defendant.
 

 The complaint alleges that Maggio entered into contracts of sale with Leeward on October 29, 1992 and gave $200,000.00 to Leeward, to be held in escrow by the FDIC’s Counsel, O’Connor, Reddy & Jensen, as a down payment under the contract. The Court notes that the October 29, 1992 agreement between Leeward and Maggio provides that the downpayment shall become nonrefundable if the purchaser requests an adjournment of the closing date.
 
 See
 
 October
 
 *1025
 
 29, 1992 Agreement, at ¶ 5 (if the downpayment becomes nonrefundable “the escrow agent shall release same to the Consolidated Asset Recovery Corporation or servicing agent for the FDIC as receiver for City-trust”).
 

 The complaint makes reference to the Consent Orders in CV 91-4671. According to the complaint, the Consent Orders appointed Maggio as temporary receiver to protect the property for the “benefit of the FDIC, as mortgagee, and Maggio, as contract vendee.”
 
 Compl.
 
 ¶ 14. The complaint also alleges that Maggio sought to terminate the sales contracts and be reimbursed for his down payment, but that FDIC’s agent Consolidated Asset Recovery Corporation (“Consolidated”) extended the mortgage commitment date in the October 29, 1992 contract. The Court notes that the contract provides that if the purchaser did not notify the seller of a financing commitment by December 29, 1992 the agreement “shall automatically be deemed terminated.” October 29, 1992 Agreement, at ¶ 5.
 

 Thereafter, according to the complaint, Maggio and Consolidated had various negotiations regarding the sale of Blue Water Marina to Maggio during the period between February, 1993 and August, 1994, which did not culminate in a closing. It is alleged that two letters form a contract for sale of the premises to Maggio, namely (1) a letter dated August 25, 1994 from Maggio’s counsel to Consolidated offering to purchase the property for $1,550,000, less the $200,000 down payment and (2) a letter dated August 31, 1994, from Consolidated (identified in the complaint as FDIC’s agent) to Maggio’s counsel, advising that Leeward accepted Maggio’s August 25,1994 offer. It is alleged that during the months of October and November 1994, Leeward “ratified” the terms of the alleged contract.
 

 The complaint further alleges that Maggio was advised in December, 1994 that Leeward would not consummate the sale to him. The complaint also alleges that Relinger and Panusuk, as assignees of the FDIC, were advised that a contract for sale of the premises to Maggio existed between Maggio and Leeward, and that Maggio was ready, willing and able to execute his obligation under the contract.
 

 In the complaint, Maggio alleges that Leeward has breached its agreement to sell the Blue Water Marina to Maggio, and that Re-linger and Panasuk have “refused to take the necessary and available action to compel the transfer of the Property to Maggio.” Compl. ¶¶ 39-40. The complaint also sets forth a cause of action against the FDIC for the alleged failure to carry out an alleged obligation to compel Leeward’s compliance with the Consent Orders “and cause title to the Property to be transferred to Maggio.”
 

 The complaint seeks specific performance of the alleged contract of sale of the Blue Water Marina to Maggio, and in the alternative seeks money damages in the amount of $2,355,000.00, plus interest.
 

 On June 30, 1995, the Court approved and so ordered a stipulation in this action between Maggio and the defendant FDIC, discontinuing the action and dismissing the complaint against the FDIC. On August 8,1995, Maggio filed an amended complaint, pursuant to Fed.R.Civ.P. 15(a), as of right, against Leeward Ventures, Barry Relinger and Gary A. Panasuk. The amended complaint states:
 

 This is an action seeking specific performance of a contract to acquire certain real property and for damages for breach of contract. This Court has subject matter jurisdiction over this claim under the common law doctrine established by the United States Supreme Court that the Court which first exercises control over property in an in rem proceeding has exclusive jurisdiction over all other claims relating to title to said property. This Court has supplemental and ancillary jurisdiction over the state law claims against the remaining defendants pursuant to 298 U.S.C. 1367.
 

 Amended Compl. ¶ 1. The plaintiff and the defendants are all residents of New York state.
 

 By these motions to dismiss, the defendants Leeward, Relinger and Panasuk contend that the Court lacks subject matter jurisdiction to hear this case and that the
 
 *1026
 
 complaint fails to state a cause of action upon which relief may be granted.
 

 II. DISCUSSION
 

 A.
 
 The motions to dismiss for lack of subject matter jurisdiction
 

 The defendants move, pursuant to Rule 12(b)(1) for dismissal of the action based on a lack of subject matter jurisdiction. Rule 12(h) provides: “[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.” The party asserting jurisdiction bears the burden of proving that the case is properly in the federal system of limited jurisdiction.
 
 United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.,
 
 30 F.3d 298, 301-02 (2d Cir.1994) (citing
 
 McNutt v. General Motors Acceptance Corp.,
 
 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)).
 

 According to the Second Circuit,
 

 “In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States.”
 
 Goldman v. Gallant Sec., Inc.,
 
 878 F.2d 71, 73 (2d Cir. 1989) ... “Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is ‘so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.’”
 
 Growth Horizons, Inc. v. Delaware County, Pa.,
 
 983 F.2d 1277, 1280 (3d Cir.1993)....
 

 IUE AFL-CIO Pension Fund v. Herrmann,
 
 9 F.3d 1049, 1055 (2d Cir.1993),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 86, 130 L.Edüd 38 (1994).
 

 Here, the plaintiff relies upon the common law rule that a court which has control over a
 
 res
 
 in an
 
 in rem
 
 proceeding, has exclusive jurisdiction over subsequent actions concerning the same
 
 res.
 
 The plaintiff cites the following passage from
 
 Kline v. Burke Construction Co.,
 
 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922):
 

 It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached.
 

 Id.
 
 at 229, 43 S.Ct. at 81. The plaintiff also cites
 
 U.S. v. One 1985 Cadillac Seville,
 
 866 F.2d 1142, 1145 (9th Cir.1989), in which the court stated: “A common law rule of long standing prohibits a court, whether state or federal, from assuming
 
 in rem
 
 jurisdiction of over a
 
 res
 
 that is already under the
 
 in rem
 
 jurisdiction of another court.” The Ninth Circuit also noted:
 

 The rule against concurrent
 
 in rem
 
 proceedings is not a constitutional limitation upon the jurisdiction of the Federal Courts. Rather it is a prudential limitation applied by the Supreme Court in the interests of judicial harmony. This does not mean however that the matter is within the discretion of the District Court. The language of Penn General indicates that a federal court
 
 must
 
 yield to a prior state proceeding.
 
 Penn General [Casualty Co. v. Pennsylvania,] supra,
 
 294 U.S. [189] 195 [55 S.Ct. 386, 389, 79 L.Ed. 850 (1935).] (The jurisdiction of one court
 
 must of necessity yield to the other.)
 

 One 1985 Cadillac Seville, supra,
 
 866 F.2d at 1145.
 

 The plaintiff argues that the foreclosure action was an
 
 in rem
 
 proceeding, and that the present contract action is actually an
 
 in rem
 
 proceeding because it seeks ownership and possession of the Blue Water Marina, and also seeks to exclude another from an interest in it. Specifically, Maggio claims that the present owner of the marina must sell the property to him and no other party.
 

 
 *1027
 
 As to the foreclosure action, the Court notes the following discussion by the New York Court of Appeals:
 

 Concededly, a foreclosure action is a “proceeding in a court of equity which is regulated by statute.”
 
 (Dudley v. Congregation, Third Order of St. Francis,
 
 138 N.Y. 451, 457, 34 N.E. 281, 282; see, also,
 
 Amherst Factors, Inc. v. Kochenburger,
 
 4 N.Y.2d 203, 173 N.Y.S.2d 570, 149 N.E.2d 863). Nevertheless, it is well settled that such a proceeding is unlike other equity actions in several ways. Thus, while equity acts only in personam, an action for the foreclosure “is in the nature of a proceeding
 
 in rem
 
 to appropriate the land.”
 

 Jo Ann Homes at Bellmore, Inc. v. Dworetz,
 
 25 N.Y.2d 112, 122, 302 N.Y.S.2d 799, 806, 250 N.E .2d 214, 219 (1969).
 

 The resolution of the motion to dismiss based on lack of federal question jurisdiction, requires an analysis of the second action, namely the contract action. The plaintiff claims that because the contract that he seeks to enforce involves the purchase of real property, that the present action is an
 
 in rem
 
 proceeding. He states that instead of requesting a general money damage award, which he asks for in the alternative, he seeks possession and ownership of the particular piece of land. Maggio states that his right to such relief flows directly from the Consent Order entered in the foreclosure action, as follows:
 

 “If the Court finds in this action that Maggio is entitled to enforce his rights under his contract and obtain title, then Relinger and Panusuk, in the foreclosure action, would be precluded from selling the property, either by deed or at auction or by compelling execution of a bargain and sale deed or deed-in-lieu of foreclosure to anyone other than Maggio. Clearly, the Court could not give full effect to a foreclosure judgment to the benefit of Relinger and Panasuk if Maggio’s claim for specific performance was not determined. The Court’s control of the
 
 res
 
 in the foreclosure action mandates the Court to hear and determine the competing claims of title to the same res.”
 

 Plaintiffs memo of law, at 6.
 

 The defendants cite authority for the proposition that an action for specific performance is equitable in nature, and that courts of equity act
 
 in personam. See Ruder v. Lincoln Rochester Trust Co.,
 
 18 A.D.2d 763, 235 N.Y.S.2d 191 (4th Dep’t 1962) (“the remedy of the specific performance of contracts is purely equitable, given as a substitute for the legal remedy of compensation ...”);
 
 see also In re Rosenberg,
 
 269 N.Y. 247, 252, 199 N.E. 206 (1935),
 
 cert. denied,
 
 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392 (1936) (“it is well settled that a court of equity acts
 
 in person-am”)-,
 
 55 N.Y.Jur.2d, Equity § 12 (same).
 

 The defendants note, and the Court agrees, that the action to foreclose the mortgage will be unaffected by a transfer of title to the real property that is the subject of the foreclosure action. Any transfer of title to the property will be subject to the interest of the mortgagees to receive payment or maintain their security interest in the premises.
 

 Clearly, federal principles do not control the disposition of this contract action. In the Court’s view the plaintiffs action is of a type traditionally and appropriately adjudicated by the state court of unlimited jurisdiction. However, under the particular circumstances of this case, the Court cannot say with certainty that federal subject matter jurisdiction is lacking. In the Court’s view, the reasoning reflected in the following passage from Black’s Law Dictionary is instructive:
 

 “In rem” proceedings encompass any action brought against person in which essential purpose of suit is to determine title to or to affect interests in specific property located within territory over which court has jurisdiction.
 
 ReMine ex rel. Liley v. District Court for City and County of Denver, Colo.,
 
 709 P.2d 1379, 1382. It is true that, in a strict sense, a proceeding
 
 in rem
 
 is one taken directly against property, and has for its object the disposition of property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to
 
 *1028
 
 actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien.
 
 Pennoyer v. Neff
 
 95 U.S. 714, 24 L.Ed. 565. In the strict sense of the term, a proceeding “in rem” is one which is taken directly against property or one which is brought to enforce a right in the thing itself.
 

 Id.
 
 at 793. In the Court’s view, the present contract action, which seeks to determine title to and affect interests to the subject property, arguably falls within the parameters of an
 
 in rem
 
 proceeding. However, it is not clear how another court’s jurisdiction over the contract action would impair or defeat this Court’s jurisdiction in the foreclosure action. With some reluctance and uncertainty regarding the plaintiffs federal jurisdictional claims, the Court denies the defendants’ motions to dismiss the complaint, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction.
 

 B.
 
 The motions to dismiss for failure to state a cognizable claim
 

 As to the standard guiding the Court’s determination of the defendant’s motion to dismiss for failure to state a claim, “the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears ‘beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief”.
 
 Goldman v. Belden,
 
 754 F.2d 1059, 1065 (2d Cir.1985) (quoting
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957));
 
 see also Intern. Audiotext Network, Inc. v. AT & T,
 
 62 F.3d 69, 71 (2d Cir.1995). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider “only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken”.
 
 Samuels v. Air Transport Local 504,
 
 992 F.2d 12,15 (2d Cir.1993);
 
 see also Cortec Indus., Inc. v. Sum Holding L.P.,
 
 949 F.2d 42, 47 (2d Cir.1991),
 
 cert. denied,
 
 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).
 

 It is not the Court’s function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient,
 
 see Goldman,
 
 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true,
 
 see LaBounty v. Adler,
 
 933 F.2d 121, 123 (2d Cir.1991);
 
 Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.,
 
 879 F.2d 10, 14 (2d Cir.1989),
 
 cert. denied,
 
 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff.
 
 See Scheuer v. Rhodes,
 
 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974);
 
 Doe v. City of New York,
 
 15 F.3d 264, 266 (2d Cir.1994). “ ‘The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.’” Villager
 
 Pond, Inc. v. Town of Darien,
 
 56 F.3d 375, 378 (2d Cir.1995) (quoting
 
 Scheuer v. Rhodes,
 
 416 U.S. 232, 235-36, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).
 

 The Court is mindful that under the modern rules of pleading, a plaintiff need only provide “a short and plain statement of the claim showing that the pleader is entitled to relief’, Fed.R.Civ.P. 8(a)(2), and that “[a]ll pleadings shall be so construed as to do substantial justice”. Fed.R.Civ.P. 8(f).
 

 It is within this framework that the Court addresses the present motion to dismiss the complaint.
 

 1.
 
 as to the alleged “1994 Contract”
 

 “To state a claim for breach of contract under New York Law, a plaintiff must plead the existence of a valid contract between the parties, breach and damages.”
 
 Pompano-Windy City Partners v. Bear Stearns & Co.,
 
 794 F.Supp. 1265, 1290 (S.D.N.Y.1992). The plaintiff alleges that following the execution of the agreement to purchase dated October 29, 1992, negotiations for the sale of the Blue Water Marina continued between Maggio and Consolidated. The amended complaint alleges that Consolidated acted as FDIC’s agent and also on behalf of Leeward. According to the amended complaint, two letters formed the basis of
 
 *1029
 
 a second contract to sell the marina to Maggio. The first is a letter dated August 31, 1995 [sic], presumed to be August 31, 1994, from Maggio’s counsel Michael G. Bennett to Patrick M. Campion, Vice President of Consolidated, which states, among other things, the following:
 

 please be advised that my client has authorized this office to make the following offer to purchase the property located at 1944 Bayberry Avenue, Merrick, New York.
 

 My client will pay the sum of $1,500,-000.00 to purchase, in fee simple absolute, the real property aforementioned, less the sum of $200,000 previously paid.
 

 Id.
 
 Bennett’s letter states that it annexed a financing commitment letter dated August 24, 1994 from Natwest Bank, and also states that Maggio is “ready willing and able to close as soon as your attorney clears up some of the title objections previously recorded by Verrasano Associates, Ltd., and the attorneys for NATWEST BANK complete the preparation of the documents required.”
 
 Id.
 
 The complaint identifies this letter as Maggio’s offer to purchase. The second letter that is alleged, with the first, to form the contract to sell the Blue Water Marina dated August 31,1994 is from Patrick M. Campion, Vice President of Consolidated, to Maggio, which states the following:
 

 Please be advised that consolidated received your recent $1,500,000 offer to purchase 1944 Bayberry Avenue, Merrick NY. On behalf of the owner, Leeward Ventures, Inc., your offer has been accepted as presented. We require that you employ every effort to close the transaction immediately but no later than September 15, 1994. Please instruct your counsel to contact our counsel, William O’Connor to execute the documents.
 

 Id.
 
 The amended complaint identifies this letter as an acceptance of Maggio’s offer forming the “1994 Contract,” and also alleges that “Leeward ratified the terms of the August 1994 contract.”
 

 The defendants first argue that the two letters relied upon by Maggio do not constitute an agreement sufficient to satisfy the statute of frauds. New York’s statute of frauds provides in pertinent part:
 

 “A contract ..., for the sale, of any real property, is void unless the contract or some note or memorandum thereof expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing.”
 

 New York Gen.Obl.Law § 5-703. To satisfy these requirements, “a memorandum, subscribed by the party to be charged, must designate the parties, identify and describe the subject matter and state all of the essential terms of a complete agreement.”
 
 Cohen v. Swenson,
 
 140 A.D.2d 407, 528 N.Y.S.2d 110, 111 (2d Dep’t 1988).
 

 In the Court’s view, the letters set forth above sufficiently identify the property, the parties, the purchase price, the financing commitment, that the property will purchased “as is,” and that marketable title will be transferred. Consolidated’s letter states that it expects the plaintiff to make every effort to close prior to September 15, 1994. It is noted that the absence of an established closing date is not an impediment to the enforceability of a real estate sales contract.
 
 Kursh v. Verderame,
 
 87 A.D.2d 803, 449 N.Y.S.2d 500 (1st Dep’t),
 
 appeal denied,
 
 57 N.Y.2d 608, 455 N.Y.S.2d 1028, 442 N.E.2d 70 (1982).
 

 The defendants argue that the complaint must be dismissed based on the absence of an allegation that Consolidated’s authority was in writing. They further argue that the plaintiff will be unable to establish that fact. Accepting the allegations of the amended complaint as true, as the Court must do with regard to this Rule 12(b)(6) motion, the persons writing the letters regarding the sale of the Blue Water Marina did so with the authority of the persons they purported to represent. In the Court’s view, at this early stage of the proceedings the allegations suffice to state a cognizable breach of contract claim and satisfy the requirements of the statute of frauds. Whether the plaintiff can demonstrate that Consolidated had authority to bind Leeward or the FDIC, the predecessor in interest to Relinger and Panasuk, is a
 
 *1030
 
 matter that need not be resolved at the pleading stage.
 

 The defendants also argue that the August 31, 1994 letter from Consolidated’s Vice President constitutes a counter offer rather than an acceptance of Maggio’s offer. The defendants contend that the closing date and issues relating to title objections were not resolved by the plaintiffs letter. The Court disagrees. The plain language of Consolidated’s August 31, 1994 letter is evidence to the contrary. It states: “On behalf of the owner, Leeward Ventures, Inc., your offer has been accepted as presented.”
 

 The defendants Relinger and Panasuk note that they are not alleged to have been parties to the 1994 contract for sale of the property. However, the amended complaint does allege that their predecessor in interest, the FDIC, played an active role with regard to negotiating and even soliciting Maggio’s offer to buy. It is not possible to ascertain on the presently undeveloped record, prior to discovery, whether Relinger and Panasuk, stepping into the shoes of the FDIC, may be subject to liability. Therefore, the Court declines to dismiss the complaint against them at this stage of the proceedings.
 

 It is the Court’s view that the amended complaint sufficiently states a claim with regard to the alleged “1994 Contract.” So saying, the Court gives no opinion as to the merits of this claim or its likelihood for success, but merely finds that the complaint itself alleges a cause of action for breach of the “1994 Contract” upon which relief may be granted.
 

 2.
 
 as to the alleged obligation to Maggio under the terms of the Consent Orders in the foreclosure action
 

 To the extent that the amended complaint seeks a transfer of title to the Blue Water Marina, or damages, based on an obligation by Leeward, Relinger and Panasuk set forth in the Consent Orders in the Foreclosure Action, CV 91-4671, the Court perceives no right to such relief inuring to Maggio’s benefit from the Consent Orders. The New York Court of Appeals discussed the concept of third-party beneficiaries as follows:
 

 We think that the Restatement formulations state the essence of the prior holdings of this court while clearing away some of the unnecessary differentiations and circuitous language set forth in some of those decisions [footnote omitted]. Thus, the absence of any duty of the promisee to the beneficiary has been held to negate an intention to benefit in both governmental and private contract eases
 
 Moch Co. v. Rensselaer Water Co.,
 
 247 N.Y. 160, 165, 159 N.E. 896;
 
 Durnherr v. Rau,
 
 135 N.Y. 219, 221, 32 N.E. 49;
 
 Corporate Leasing v. AFA Protective Sys.,
 
 101 A.D.2d 768, 476 N.Y.S.2d 134, but we have also noted in
 
 McClare v. Massachusetts Bonding & Ins. Co.,
 
 266 N.Y. 371, 379, 195 N.E. 15, that “The requirement of some obligation or duty running from the promisee to the third party beneficiary has been progressively relaxed until a mere shadow of the relationship suffices, if indeed it has not reached the vanishing point.” Rather than duty, we have emphasized when upholding the third party’s right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract
 
 (Seaver v. Ransom,
 
 224 N.Y. 233, 239, 120 N.E. 639,
 
 supra, see, Matter of International Ry. Co. v. Rann,
 
 224 N.Y. 83, 88, 120 N.E. 153) or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party
 
 (McClare v. Massachusetts Bonding & Ins. Co., supra; Rigney v. New York Cent. & Hudson Riv. R.R. Co.,
 
 217 N.Y. 31, 38, 111 N.E. 226), as by fixing the rate or price at which the third party can obtain services or goods
 
 (Pond v. New Rochelle Water Co.,
 
 183 N.Y. 330, 336, 76 N.E. 211;
 
 Little v. Banks,
 
 85 N.Y. 258), even though there was not duty of the promisee to the third party.
 

 Fourth Ocean Putnam v. Interstate Wrecking,
 
 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E .2d 208, 212 (1985). The Second Circuit has stated that under New York law, “a beneficiary of a promise is an intended third-party beneficiary when,
 
 inter alia,
 
 recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the performance will satisfy an obligation of the promisee to pay
 
 *1031
 
 money to the beneficiary.”
 
 BAII Banking Corp. v. UPG, Inc.,
 
 985 F.2d 685, 697 (2d Cir.1993).
 

 In the Court’s view, Maggio cannot establish facts to demonstrate that he was the intended third party beneficiary of the Consent Orders entered in the foreclosure action. The Court has again reviewed the Consent Orders, which are referred to in the plaintiffs pleadings. There is no provision in the Consent Orders that obligates Leeward to sell the mortgaged premises to Maggio or to anyone else. Nor is there any provision in the Consent Orders that obligates the FDIC or its successors in interest to compel Leeward to sell the mortgaged premises to Maggio or to anyone else. The relevant portions of the Consent Order, which are set forth above in their entirety, state that (a) at the time of execution, Leeward had contracted to sell the mortgaged premises (¶ 6); (b) the defendants assigned their rights to payment of proceeds from the contract of sale to the FDIC (¶ 7); and (c) that in the event that a closing did not occur by December 30, 1992, the FDIC could opt to foreclose, compel the defendants to convey the mortgaged premises by deed-in-lieu of foreclosure, or compel the defendants to sell the mortgaged premises at a commercial auction. None of these provisions constitutes an obligation by either Leeward or the FDIC to assure that the mortgaged premises were sold to Maggio, or anyone else. The parties to the Consent Order can fully comply with its terms without any benefit flowing to Maggio. The purpose of the Consent Orders was to settle the foreclosure action and satisfy Leeward’s mortgage. The sale to Maggio was merely one of the ways by which Leeward’s mortgage could be satisfied under the terms of the Consent Orders. It is noted that the October 29, 1992 sales agreement provided for its own expiration on December 29, 1992, as set forth at ¶ 5, the mortgage contingency provision.
 

 The Court finds that the amended complaint fails to set forth a cause of action upon which relief may be granted as to breach of the defendants’ alleged obligations set forth in the Consent Orders in the foreclosure action. Accordingly, the defendants’ motion, pursuant to Rule 12(b)(6), to dismiss the plaintiffs claims relating to such an obligation is granted.
 

 C.
 
 The plaintiffs motion to consolidate
 

 Fed.R.Civ.P. 42(a) provides:
 

 When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
 

 Id.
 
 “The trial court has broad discretion to determine whether consolidation is appropriate.”
 
 Johnson v. Celotex Corp.,
 
 899 F.2d 1281, 1284 (2d Cir.1990),
 
 cert. denied,
 
 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990).
 

 In the Court’s view, consolidation of the present case with
 
 Relinger and Panasuk v. Leeward,
 
 CV 91-4671 is not necessary to promote considerations of judicial economy,
 
 see Johnson,
 
 899 F.2d at 1284, or to avoid conflicting results,
 
 see Bank of Montreal v. Eagle Assoc.,
 
 117 F.R.D. 530, 533 (S.D.N.Y. 1987). Accordingly, the Court declines to exercise its discretion to consolidate the actions, and the plaintiffs motion to consolidate is denied.
 

 III.
 
 CONCLUSION
 

 Based on the foregoing, it is hereby
 

 ORDERED, that the defendants’ motions pursuant to Fed.R.Civ.P. 12(b)(1) is denied; it is further
 

 ORDERED, that the defendants’ motions pursuant to Fed.R.Civ.P. 12(b)(6) is denied as to the claims relating to the “1994 Contract” and is granted as to the claims relating to alleged obligations by the defendants arising from the Consent Orders in the foreclosure action; and is further
 

 ORDERED, that the plaintiffs motion pursuant to Rule 42(a) is denied.
 

 SO ORDERED.